A07A0304. IN THE INTEREST OF D. S., a child.

(647 SE2d 417)

JOHNSON, Presiding Judge.

The Houston County Juvenile Court terminated the parental rights of the mother and father of D. S. The parents appeal, asserting that the evidence is insufficient to support the juvenile court's decision. Because several of the findings in the juvenile court decision are based on evidence that is not clear and convincing and, in some instances, evidence that is not even in the record before us, we must reverse. We note that this is an atypical termination case in that it was not brought by the Department of Family and Children Services (the "Department"). Rather, the case was initiated by relatives of the child's father, and according to the record before us, insofar as the Department became involved, it did not substantiate the claims of parental unfitness.

D. S. was born on December 29, 2003.[1] On June 17, 2004, a cousin of the child's father and the cousin's husband filed a petition for custody of the child in Houston County Superior Court, alleging that D. S. had been the victim of family violence. That same day, the superior court issued an ex parte order awarding temporary custody of D. S. to the cousin and her husband and transferring the matter to the Houston County Juvenile Court.

On June 23, 2004, the parties appeared before a juvenile court judge, who stated that the case had been transferred to the juvenile court not as a family violence matter, but as a deprivation case. During the brief hearing, the parents requested that the court order the Department to investigate their home and the allegations of

---

[1] In its termination order, the juvenile court states that the child was born on December 27, 2003. However, numerous documents in the appellate record, including the petition to terminate parental rights and medical records, indicate that the child's date of birth is December 29, 2003.

misconduct. The juvenile court issued such an order, directing that the Department investigate the parents while the child remained in the temporary custody of the cousin and her husband.

Another brief hearing was held before the juvenile court on July 28, 2004. An attorney for the Department told the court that several weeks earlier the father had taken a "strip test" that was positive for marijuana, but later that same day he took another test that was negative. Since then, the father had another negative drug test and the mother had two negative drug tests. The attorney also informed the court that the Department had found nothing in the parents' home that would cause the Department to remove the child from them and that it was the Department's feeling that the child should go back to the parents. In addition, the court-appointed guardian ad litem told the juvenile court judge that she had looked over the parents' home and it seemed appropriate.

Approximately two months later, on October 1, 2004, the juvenile court held a deprivation hearing. The petitioners presented testimony that the mother and father had gotten food donations from a local ministry, that they had not paid rent on time, that the mother did not have a job, that the father worked as a painter and at Wal-Mart, that the couple had people live with them to help care for D. S., that the mother would yell at D. S. when she cried, that the parents did not keep the child clean, that the mother often did not hold D. S. when feeding her and instead propped her up with a bottle in a baby swing, that the baby would sometimes sleep all day, that ants were once found in the baby's crib, that the parents did not take D. S. to the doctor when she was congested and coughing so relatives had to take her to the doctor, that on one occasion the mother roughly handed the baby to one of the aunts while complaining that she had been crying for two days, and that relatives would care for D. S. for days at a time without any calls from the parents asking about her.

An investigator for the Department testified that the allegations in the complaint of a dirty home, domestic violence and lack of medical attention could not be substantiated. The investigator found that the home was tidy and had no health or safety hazards, and she found no evidence of domestic violence. The investigator further testified that if she had gotten enough information about the mother yelling at the child, the Department would have created a case plan to work with the parents in their home and to have them attend parenting classes, but the Department would not have removed the child from the home based on that allegation alone.

As for medical attention, the investigator testified that a doctor who had treated D. S. informed her that the child was on medication for acid reflux and had been treated for bronchitis, but the child was not failing to thrive and was on a normal growth curve. The doctor did

not testify at the deprivation hearing, but her deposition, which was taken by the petitioners' counsel without the parents' attorney present, is in the record and is consistent with the Department investigator's testimony. The doctor deposed that D. S. was on reflux medication, had been treated for a case of bronchiolitis that was not very severe, and was following a normal growth curve.

The deprivation hearing was continued until October 5, 2004, although the record before us contains no transcript of that hearing. On that date, the judge issued an order which states that an evidentiary hearing was indeed held on October 5 and the order further directs the parents to undergo psychological evaluations based on the court's concerns about evidence that the child cried and slept excessively, and that the parents did not check on the child when she was in the care of the petitioner cousin and her husband.

On October 20, 2004, the juvenile court entered another order stating that it had scheduled a deprivation hearing for that date — October 20 — and that evidence had been presented. The record before us contains no transcript of a deprivation hearing held on October 20, 2004. In its order from that date, the court goes on to find that the parents lack residential stability, employment stability and understanding as to the care that babies need. The court concluded that D. S. is deprived, ruled that the petitioners shall continue to have temporary custody of the child and ordered the parents to adopt a case plan prepared by the Department.

The Department prepared a plan, beginning on October 21, 2004, to reunify the parents with their child. The goals set forth in that plan are that the parents will resolve some unidentified mental health issues, maintain stable housing and income, maintain meaningful contact with D. S., develop adequate parenting skills and participate in all activities requested by the Department.

On August 17, 2005, the court held a review hearing. There is no transcript of that hearing. Apparently evidence was presented at that hearing because on August 23, 2005, the juvenile court entered an order containing findings of fact. Despite the fact that the reunification plan commencing on October 21, 2004, had not yet been in place for a year, the court's first finding of fact was that the parents had not completed their case plan in more than a year. Based on its findings of fact, the court concluded that there was no reason for the Department to continue working on the case plan with the parents and it ordered the Department to cease all efforts and close its file.

A week later, the cousin and her husband filed a petition to terminate the parental rights of the child's mother and father. At the termination hearing held on October 14, 2005, the petitioners' only testimony came from themselves and Joyce Brown, the court-appointed special advocate for D. S. The petitioners testified that

D. S. is thriving and happy in their home, that after visits with the parents she smells of cigarette smoke and gets sick, that the parents have not complied with a court order to pay $240 per month in child support, that they did not call to check on D. S. when she was sick and that they had missed scheduled visits.

The special advocate testified that she had visited with the child and the parents on only one occasion. On that visit, she was concerned that the mother did not know D. S.'s diaper size and that she was drinking milk rather than formula. She was also concerned that the mother had not checked on D. S. when she was in the hospital to have her tonsils removed and tubes put in her ear. She opined that the cousin and her husband can provide a more stable and nurturing environment for the child than the parents are able to provide.

On October 25, 2005, the juvenile court entered its order terminating the mother and father's parental rights. In the order, the court states that it considered evidence submitted at the termination hearing, as well as previously submitted evidence, although the order does not specify what prior evidence was considered. The order does not contain clear findings of fact, but consists primarily of 19 numbered paragraphs, most of which are legal conclusions or a mixture of findings of law and fact.

The termination of parental rights involves a two-step process.[2] The juvenile court must first consider whether there is clear and convincing evidence of parental misconduct or inability, and if so, the court then considers whether termination of parental rights is in the best interest of the child.[3]

> On appeal, we determine whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.[4]

---

[2] *In the Interest of T. C.*, 282 Ga. App. 659 (639 SE2d 601) (2006).

[3] Id.

[4] (Citation omitted.) *In the Interest of D. P.*, 284 Ga. App. 453, 454 (644 SE2d 299) (2007).

In the instant case, the brief testimony presented by the petitioners at the termination hearing does not amount to clear and convincing evidence justifying termination of parental rights. But as noted at that hearing and in the termination order, the juvenile court also relied on evidence previously admitted in the case. Our review of the sufficiency of that evidence is hampered by the juvenile court's failure to indicate what that prior evidence is, and more importantly, by the fact that several prior evidentiary hearings in this matter were apparently not transcribed.

OCGA § 15-11-41 (b), which governs the conduct of juvenile court hearings, provides that "[t]he proceedings shall be recorded by stenographic notes or by electronic, mechanical, or other appropriate means, unless such recording is waived by the child and the child's parent, guardian, or attorney." This provision for mandatory recording of juvenile court proceedings facilitates appellate review.[5]

As noted above, the appellate record does not contain transcripts of the hearings held on October 5, 2004, October 20, 2004, and August 17, 2005, all of which the juvenile court referred to in orders significantly impacting the parents' rights. There is no indication in any of those orders that the parents waived the recording of those hearings. The petitioner cousin and her husband have stated in their appellate brief that the unrecorded hearing of August 17, 2005, was held after the parents requested such a hearing. It is unclear from the wording of their brief if the appellees are claiming that the parents actually requested that the hearing not be recorded. But if that is their claim, they have not supported it by any evidence in the record. They have cited to a page in the record at which the parents moved the court to review the case plan and other issues. But that motion makes no request that the review hearing be unrecorded.

Not only is the record missing hearing transcripts, but it does not contain sufficient evidence to support several of the key findings made by the juvenile court in its termination order. For instance, the court found that it had heard clear and convincing evidence that the parents have a medically verifiable deficiency in their mental or emotional health that renders them unable to provide for the child. The record before us contains no evidence of the parents having any mental or emotional deficiency. While the juvenile court did order the parents to undergo psychological evaluations after one of the hearings for which there is no transcript, the record contains no such evaluations, and no expert testimony concerning the parents' mental health was presented at the termination hearing or any of the other transcribed hearings.

---

[5] Id. at 455-456.

The juvenile court, which is located in Houston County, also found that the parents had failed to comply with a court order of the Peach County Superior Court to pay monthly child support of $240. The record, however, does not contain such an order, nor is there any evidence as to why such an order may have come from another court in a different jurisdiction. While there may indeed be such an order, absent some competent evidence as to the existence and validity of it, we cannot say this finding by the juvenile court is supported by clear and convincing evidence.

The juvenile court also based its termination of parental rights on a finding that the parents had failed to successfully complete the reunification plan. Again, there is not clear and convincing evidence in the record to support this finding. No caseworker or any other person from the Department testified at the termination hearing; thus there is no evidence from the agency which supervised the parents under the plan as to their compliance or noncompliance.[6] It is true that in its order of August 2005 the juvenile court found noncompliance with the case plan, but that order arose out of one of the unrecorded hearings. Thus, it is impossible for us to review the sufficiency of the evidence supporting such a finding.

Termination of parental rights is a remedy of last resort which cannot be sustained absent clear and convincing evidence.[7] "While we are reluctant to reverse the juvenile court's determination, no judicial determination is more drastic than the permanent severing of the parent-child relationship."[8] Given the improper absence of transcripts from several of the juvenile court proceedings as well as the lack of clear and convincing evidence for findings made by the juvenile court, we must reverse the order terminating parental rights.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 8, 2007.

*T. Rabb Wilkerson III*, for appellants.
*Pamela R. Greenway, Sherry H. Campbell*, for appellee.

---

[6] The court-appointed special advocate gave testimony that could be construed as showing noncompliance with the case plan, but it was based on inadmissible hearsay, rather than personal knowledge.

[7] *In the Interest of K. M.*, 240 Ga. App. 677, 680 (523 SE2d 640) (1999).

[8] (Citations omitted.) Id. at 680-681.