257 Ga. 630 (1987)
362 S.E.2d 56
IN THE MATTER OF J. M. S.
44740.
Supreme Court of Georgia.
Decided November 24, 1987.
R. Glen Galbaugh, for appellant.
Gail Tusan Joyner, for appellee.
GREGORY, Justice.
In October 1984, petitioner filed a petition to legitimate JMS under the authority of OCGA § 19-7-22. The child's mother was given statutory notice of the petition to legitimate, and filed responsive pleadings in opposition to the petition. Following a hearing the trial court denied the petition to legitimate. The Court of Appeals denied petitioner's application for discretionary appeal, and we granted certiorari. We affirm.
The record in this case shows that prior to 1979 the parties were married and one son was born of the marriage. They divorced in 1979, but cohabited thereafter for a short time with the result that JMS was born in October 1981.[1] During the three-year period between the *631 birth of JMS and the filing of the petition for legitimation petitioner made little effort to see or support JMS. There is some evidence to show that he saw JMS on occasion when he picked up the older child for visitation, but it is clear that petitioner has neither attempted to exercise parental authority over the child, nor has he demonstrated a substantial interest in the child. On the other hand, there is evidence to support the trial court's finding that JMS is in a stable and loving home environment where his "mental and emotional needs" are being met by the child's mother and her new husband.
The parties in this case agree that the issue is whether the trial court abused its discretion in determining that it was not in the best interest of the child to grant the petition for legitimation. In re Application of Ashmore, 163 Ga. App. 194 (293 SE2d 457) (1982); Mabry v. Tadlock, 157 Ga. App. 257, 259 (277 SE2d 688) (1981). The trial court found that "it is not in the best interest of the child to disrupt his stable family unit which exceeds any benefits which might flow to [JMS.]" We hold that the trial court did not abuse its discretion in this regard. See Best v. Acker, 133 Ga. App. 250 (211 SE2d 188) (1974).
The petitioner makes much of the trial court's reference to the fact that petitioner is a Moslem, while the child's mother is of the Christian faith. However, it is clear from reading the trial court's order that this distinction was merely one of many factors considered by the trial court in making its decision. It is apparent that the trial court's decision was not based, as petitioner alleges, on "discriminatory religious grounds."
Judgment affirmed. All the Justices concur, except Smith, J., who dissents. SMITH, Justice, dissenting.
This Court has consistently held that an application to legitimate a child is a separate and distinct issue from the final decision of who shall have custody and control of the child. Despite allegations in another case that the father who sought to legitimate his child had no love for the child, brought the petition in bad faith, was a criminal, had not contributed to the child support, and was an immoral and degraded character in every respect, the Court of Appeals affirmed the trial court's grant of the father's motion for new trial and wrote: "We might state also that this is not a question involving the disposition of custody of the child. The Superior Court of DeKalb County may or may not approve the adoption of the child, which proceeding is now pending in that court. The disposition of the child is yet to be *632 finally determined. That is a question far apart from the proceeding of the father to legitimatize the child. He may yet, or anyone else, may appear in the adoption proceedings and testify as to the best interest of the child. The court may award the custody of the child to some third person on a final hearing, having in mind only the welfare of the child. This may be done regardless of the desires of either the father or the mother of the child." (Emphasis supplied.) Bennett v. Day, 92 Ga. App. 680, 689 (89 SE2d 674) (1955). As correctly noted in Bennett, the best interest of the child standard does not come into issue until after the legitimation has been completed and the final decision on the disposition of the child is being made. Later in Sims v. Pope, 228 Ga. 289, 291 (185 SE2d 80) (1971), this Court reaffirmed its position that legitimation and custody are separate and distinct issues. "The fact that children have been legitimated does not ipso facto immunize their father from a proper showing that the children should be removed from his custody. ... [U]pon legitimation the father stands in the same position as any other parent as to his custody being subject to challenge for good and legal cause. See in this connection Bennett v. Day, 92 Ga. App. 680 (3) (89 SE2d 674)."
As noted above, legitimation is one issue and custody is another. The only right to be decided in the legitimation action is whether or not the putative father is the biological father of the child. If so, the child should be allowed to be legitimated. The custody of the child who is living with his mother is not changed upon legitimation. Any change in custody can come about only if a subsequent custody action is filed and the court finds at that point that it is in the best interest of the child to make a change in custody. Thus, the trial court's finding that it was "not in the best interest of the child to disrupt his stable family unit which exceeds any benefits which might flow to [him,]" is erroneous. Legitimation alone does not award custody to the father.
As stated in Hughes v. Parham, 241 Ga. 198, 202 (243 SE2d 867) (1978) affd. 441 U. S. 347 (99 SC 1742, 60 LE2d 269), "[t]he state has a legitimate interest in encouraging fathers of illegitimate children to legitimate the child by petition or by marrying the mother." This is the only way the child can ever inherit from his father. The public policy of this state is to encourage fathers to legitimate their children. If a father wishes to legitimate his child, he should be allowed to do so.
This Court has expressed the public policy of the state in attempting to declare illegitimate children capable of inheriting from their fathers even in cases in which there was no formal legitimation proceeding but where there was clear and convincing evidence that the deceased father was the biological father of the child. See Prince v. Black, 256 Ga. 79 (344 SE2d 411) (1986); and Thompson v. Brown, 254 Ga. 191 (326 SE2d 733) (1985). For goodness sake, the child's *633 sake, and the state's sake, we must uphold the state's public policy and allow a father to legitimate his child. Only after the legitimation does the question of custody arise and at that point the all important inquiry is what is in the best interest of the child. Prior to that time the public policy of this state dictates that the important inquiry is whether or not the putative father is or is not the biological father.
NOTES
[1] While the mother of the child initially denied that petitioner was the father of JMS, she now concedes that he is the child's father. HLA tests show a 98.8% probability that petitioner is the father of JMS, and the trial court made a finding of fact that petitioner is the father of JMS.