957 So.2d 869 (2007)
STATE of Louisiana on behalf of Terri Leigh MURPHY, Plaintiff-Respondent
v.
Agga L. HAREN, Defendant-Applicant.
No. 42,098-JWC.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
*870 Seabaugh, Benson, Keene, Denny & Gerhardt, by J. Todd Benson, Bryce Denny, Shreveport, for Defendant-Applicant Agga L. Haren.
Robert Randall Smith, Assistant District Attorney, for Plaintiff-Respondent State of Louisiana and Terri Leigh Murphy.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
In this suit seeking child support, the defendant, Agga L. Haren, sought supervisory writs from a trial court ruling denying his peremptory exception of res judicata in which he asserted that the matter of his possible paternity of the child had been previously litigated in Georgia. The writ was granted, and the matter was docketed. The judgment of the trial court is affirmed. The writ is recalled, and the matter is remanded for further proceedings.

FACTS
In 1995, Terri Leigh Daniel gave birth to a daughter, BND[1], in Colorado. At the time of BND's birth, the mother was unmarried. In 1998, she married Sean Murphy.
In April 1999, Haren filed a suit for legitimation and child custody of BND in Georgia where the mother and the child resided. In this suit, Haren declared that he acknowledged the child and that he had regularly paid child support to the mother. He alleged that the mother had made "unwarranted accusations of misconduct" against him to keep him away from the child. He requested sole custody of the child or, alternatively, reasonable visitation.
The mother answered, requesting genetic testing to determine if Haren was BND's father. She acknowledged that Haren had provided some support for the child; however, she alleged that he had "mistreated and sexually abused" the child and should be denied contact with BND. The mother made a counterclaim seeking child support if Haren was determined to be the child's father.
The mother subpoenaed records pertaining to Haren's alleged abuse of BND from the Georgia Department of Family and Children Services. In response to the department's motion to quash the subpoena, the court ordered production of the records for an in camera inspection, after which the court would decide what part of the records to give to the parties.
*871 Following trial in March 2000, the Georgia trial court denied Haren's petition for legitimation and the mother's request for child support. In the judgment of the Georgia trial court, which was signed in April 2000, the court found that granting the petition to legitimate was not in the best interest of BND, "a minor child of the parties born out of wedlock." Neither party appealed.
In 2005, the mother initiated an IV-D application with the Office of Child Support Enforcement in Georgia, seeking child support from Haren, an air force officer then stationed at Barksdale Air Force Base in Louisiana. The mother asserted that Haren is the biological father of BND. She sought to establish paternity and obtain child support. Among other things, her application claimed that she and Haren lived together from 1995 to 1996[2]; she told him that he was the father; he admitted that he was the father; he paid for birth-related expenses; he lived with the child; he claimed the child on tax returns; and he provided food, clothing, gifts or financial support for the child. A copy of the child's birth certificate shows that the name of the father is not given. The mother alleged in the application that Haren sexually molested BND.
In June 2006, the mother's initial request was filed in Louisiana with the Bossier Parish District Attorney's Office acting on her behalf. In July 2006, Haren filed a peremptory exception of res judicata. He argued that the Georgia judgment, which is final, effectively held that he was not the child's father. He asserted that the Georgia judgment was entitled to full faith and credit and, consequently, his exception should be granted and the mother's claims should be dismissed with prejudice.
On August 8, 2006, the hearing officer in Bossier Parish recommended that the exception of res judicata be denied and that support be made retroactive. At the hearing, Haren testified that, to the best of his knowledge, BND is his biological child. However, he stated that there had been no DNA testing to establish this.
Haren filed an exception to the hearing officer's recommendation. On August 22, 2006, the exception was argued in the district court; the court passed the exception, directing that Haren's counsel obtain the transcript from the Georgia ruling and the Georgia statutes. However, Haren's counsel stated in brief to the trial court that it had been told by the Georgia court that no transcript existed.
On November 7, 2006, the matter was before the district court again for argument. Counsel for the State argued that, under Georgia law, legitimation and paternity are separate matters. Relying upon the portion of the Georgia judgment that stated that BND was the child of the parties, the court denied the exception of res judicata. The matter was remanded back to the hearing officer.
Haren sought review of the denial of his exception of res judicata. Pending disposition of the writ application, the district court stayed the proceedings. On January 18, 2007, this court granted Haren's writ and ordered the matter docketed.

ARGUMENTS
In brief, Haren argues that the instant Louisiana suit and the previous Georgia suit involved litigation of the same issues paternity and child support. He insists *872 that the Georgia judgment denying his petition for legitimation effectively held that he was not the child's father. To bolster his contention that paternity was actually litigated in those proceedings, he notes that the Georgia court denied the mother's request for child support. Haren asserts that the Georgia judgment is entitled to full faith and credit. He also argues that it would be unfair to burden him with a child support obligation on the child, who is now almost 12 years old, when he was denied access to her during her formative years.
The State asserts that, contrary to Haren's contention, under Georgia law, legitimation is not synonymous with paternity. The matters are handled under different statutes. (Legitimation falls under OCGA § 19-7-22, while paternity is covered in OCGA § 19-7-43.) According to the State, the Georgia jurisprudence indicates that while a biological parent can receive recognition of paternity, as the Georgia judgment apparently did in the instant case, the court may find that it is not in the best interest of the child to be legitimated. In support of its position, the State notes that an order signed by the Georgia trial judge on the day the Georgia proceedings were heard provided for an in camera inspection of records of the Houston County Department of Family and Children Services containing child abuse reports.

RES JUDICATA
La. R.S. 13:4231 provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The doctrine of res judicata is strictly construed. Any doubt regarding compliance with its requirements is to be resolved in favor of maintaining the plaintiff's action. Thurston v. Thurston, 31,895 (La.App.2d Cir.8/20/99), 740 So.2d 268. The party urging the exception has the burden of proving each essential element by a preponderance of the evidence. Welker v. Welker, 41,945 (La.App.2d Cir.3/7/07), 954 So.2d 225.
The standard of review of a ruling on an exception of res judicata is manifest error when the exception is raised before the case is submitted and evidence is received from both sides. Medicus v. Scott, 32,326 (La.App.2d Cir.9/22/99), 744 So.2d 192; Floyd v. City of Bossier City, 38,187 (La.App.2d Cir.3/5/04), 867 So.2d 993.

GEORGIA JUDGMENT
The Georgia judgment, which was signed on April 6, 2000, reads as follows in its entirety:
The above matter came on to be heard before the Honorable Edward D. Lukemire on March 24, 2000. Plaintiff and Defendant were present in Court and *873 represented by counsel. After consideration of evidence presented in the case and argument of counsel, the Court did find that it is not in the best interests of [BND], a minor child of the parties born out of wedlock, that Plaintiff's Petition to Legitimate said child be granted.
IT IS THEREFORE ORDERED AND ADJUDGED as follows:
The Petition of Plaintiff to legitimate [BND], a minor child born June 21, 1995, and all of the other prayers of the Plaintiff's Complaint are hereby denied.
IT IS FURTHER ORDERED that no child support is awarded to the Defendant.
The judgement was approved as to form by counsel for both parties.

DISCUSSION
According to the Georgia jurisprudence, the "best interests of the child" standard is generally applicable to legitimation actions. Matter of J.M.S., 257 Ga. 630, 362 S.E.2d 56 (1987); Davis v. LaBrec, 274 Ga. 5, 549 S.E.2d 76 (2001); Smith v. Soligon, 254 Ga.App. 172, 561 S.E.2d 850 (2002); Pritchett v. Merritt, 263 Ga.App. 252, 587 S.E.2d 324 (2003).[3] In fact, the "best interests of the child" standard has been applied to actions to effectively "delegitimize" a child by the mother. Baker v. Baker, 276 Ga. 778, 582 S.E.2d 102 (2003).
In Ghrist v. Fricks, 219 Ga.App. 415, 465 S.E.2d 501 (1995), a Georgia appellate court stated:
Paternity and legitimation are not the same thing. Biology is not destiny, and a man has no absolute right to the grant of his petition to legitimate a child simply because he is the biological father. Instead, we have held time and time again that the court must consider the best interest and welfare of the child before granting a legitimation petition, and that it is not bound by the desires and contentions of the biological parents. [Citations omitted.]
A review of the applicable Georgia statutes shows that a petition to legitimize a child falls under OCGA § 19-7-22. In relevant part, Subsection (g)(1) of that statute provides now, as it did in 1999 when Haren filed his petition:
Upon the determination of paternity or if a voluntary acknowledgment of paternity has been made and has not been rescinded pursuant to Code Section 19-7-46.1, the court or trier of fact as a matter of law and pursuant to the provisions of Code Section 19-7-51 may enter an order or decree legitimating a child born out of wedlock, provided that such is in the best interest of the child. [Emphasis added.]
Haren contends that, under Petersen v. Tyson, 253 Ga.App. 431, 559 S.E.2d 164 (2002), his legitimation action was converted into a paternity action by the mother's request for genetic testing and her counterclaim for child support if Haren was found to be BND's father; he further asserts that the Georgia court must have denied his petition for legitimation because it found that he was not BND's father. He argues that this court should disregard the recitation in the Georgia judgment that BND is the "minor child of the parties born out of wedlock" as simply being part of the judgment's "preamble." However, it appears to be at least a finding of fact by the Georgia court which is stated in the context of that court's reasons for judgment in denying Haren's petition to legitimate. *874 Because there is no transcript available, it is not possible to discern the basis for the Georgia court's decision that legitimation by Haren was not in BND's best interests.[4] The State argues that the Georgia court found that Haren was BND's father but for some reason, possibly the allegations of abuse, determined that it was not in the child's best interest to allow Haren to legitimate her.[5] Likewise, we have no information about the resolution of the child support issue beyond the mere fact that it was denied.
On the record before us, we are unable to say what was actually litigated and, most importantly, adjudicated in the Georgia proceedings. The issue of whether Haren was the father of BND was key to his petition to legitimate her. However, given the wording of the Georgia judgment, we cannot say that the issue of BND's paternity was resolved as Haren asserts. To the contrary, the judgment language indicates that Haren was found to be the child's father but that his petition to legitimate her was denied for other reasons. Res judicata is strictly construed, and the party urging such an exception bears the burden of proof. Any doubt is to be resolved in favor of maintaining the action. Like the trial court, we are constrained to find that Haren failed to carry his burden of proof in the instant case.

CONCLUSION
The judgment of the trial court denying the defendant's exception of res judicata is affirmed. The writ granted by this court is recalled, and the matter is remanded for further proceedings. Costs in this court are assessed against the defendant/applicant, Agga L. Haren.
WRIT RECALLED; JUDGMENT AFFIRMED; CASE REMANDED.
STEWART, J., dissents with written reasons.
STEWART, J.
Pursuant to La. R.S. 13:4231, a valid final judgment bars a subsequent suit where both involved the same parties and where the causes of action asserted in the second suit existed at the time of the first suit and arose out of the same transaction or occurrence. Burguieres v. Pollingue, XXXX-XXXX (La.2/25/03), 843 So.2d 1049. These requirements are met in this instance.
In the Georgia suit filed in 1999, Mr. Haren petitioned the court to legitimate the minor child and award him custody and child support. Ms. Murphy answered the petition to request genetic testing to determine paternity and to request child support if Mr. Haren was determined to be the child's father. By requesting testing to determine paternity and seeking child support, Ms. Murphy converted Mr. Haran's legitimation action into a paternity suit. Petersen v. Tyson, 253 Ga.App. 431, 559 S.E.2d 164 (2002), citing Holcomb v. Ellis, 259 Ga. 625, 385 S.E.2d 670 (1989). *875 Under Georgia law, the purpose of determining paternity is to establish a duty to support the child. Banks v. Hopson, 275 Ga. 758, 571 S.E.2d 730 (2002); Palmer v. Bertrand, 273 Ga. 475, 541 S.E.2d 360 (2001), cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001).
Though we do not have the benefit of the Georgia court's reasons for its judgment, we do have a final judgment that denied the relief sought, including legitimation of the child by Mr. Haren and the award of child support sought by Ms. Murphy. Considering the purpose of determining paternity and the great societal importance of providing support for children, the judgment can only mean that the court did not find Mr. Haren to be the child's father despite its initial reference to her as "a minor child of the parties born out of wedlock." In light of the judgment's denial of support for a minor child, I find this description to be nothing more than a reiteration of the Mr. Haren's allegation of paternity and the fact that the child was born out of wedlock.
The present case brought by Ms. Murphy again seeks a determination of paternity and an award of child support. Ms. Murphy and Mr. Haren are the same parties in both suits. The causes of action, namely determination of the minor child's paternity and support due, asserted by Ms. Murphy in this case existed at the time of the prior suit and were asserted by her in that prior suit. They also arise from the same transaction or occurrence that was the subject matter of the prior litigation. The requirements of res judicata are clearly met. In State in the Interest of Sterling v. Coleman, 616 So.2d 844 (La. App. 3d Cir.1993), a prior judgment rendered in a paternity proceeding brought by the child's mother barred a later paternity proceeding brought by the state to establish paternity of the child and obtain support payments from the alleged father. The same result applies here. The prior judgment bars this suit.
For these reasons, I respectfully dissent.
NOTES
[1] Due to allegations of sexual abuse, we use only the child's initials in this opinion.
[2] However, on the paternity affidavit, the mother also asserted that her sexual relationship with Haren began in 1994, and that they resided together on the weekends from 1994 to 1995 when he attended the U.S. Air Force Academy in Colorado Springs, Colorado.
[3] A standard of parental fitness may be applied to determine the father's right to legitimate the child if state action interfered with the father's rights to the child. See Bowers v. Pearson, 271 Ga.App. 266, 609 S.E.2d 174 (2005).
[4] Haren testified at the hearing on the exception of res judicata that, "as explained to me by the judge and by my lawyer," he petitioned for paternity in Georgia, which was denied, and that his petition for custody was irrelevant because he was not the father. However, in the mother's paternity affidavit in her IV-D application, she stated: "Court ordered no parental rights."
[5] We note that the court in Smith v. Soligon, supra, described OCGA § 19-7-22(g) as allowing an order legitimating a child if such was in the child's best interest after the issue of paternity was resolved. The wording of the judgment in the instant case indicates that paternity was resolved to the effect that Haren was the father and that the court then considered the best interest of the child on the issue of legitimation.