### A10A0602. ERNST v. SNOW.
(699 SE2d 401)

ADAMS, Judge.

Nicole E. Ernst appeals from trial court orders granting Nicholas Snow's petition for legitimation and awarding temporary custody of Ernst's minor child, first to Snow, then to Snow's parents, and then to Snow again. As of the time of the appeal, a decision on permanent custody had not been made.

The record shows that on April 18, 2008, in the Superior Court of Richmond County, Snow filed a verified "Petition for Legitimation, Custody and/or Visitation," in which he asserted that he was the father of J. L. S. (born February 8, 2007), that he had physical custody of the child since her birth, that "her mother lived with me before and after birth," that he was fit to have custody, and that it was in the child's best interest to have legal custody placed with him. A "30-Day Conference" was scheduled for May 29, 2008. The record shows that Ernst was properly served with the petition and notice of the conference. Ernst failed to appear at the May 29, 2008 conference, and Snow's attorney presented his position, but no one testified and no evidence was introduced. Following the hearing, the court entered an order in which it found that Ernst had been properly served. The court ordered that the child be declared the legitimate child of Snow, that Snow have "immediate [t]emporary sole custody" of the child, and that Ernst have certain specified visitation rights. The court also appointed a guardian ad litem.

On September 24, 2008, Ernst moved to reconsider the June 3, 2008 order. In a verified filing, she admitted that Snow is the biological father. She averred that she did not appear at the May 29 hearing because "she had fled the state to escape the physical and mental abuse [Snow] had subjected her to." She averred that Snow had abused her mentally and physically and that he had threatened to kill her and her children. She averred that on June 4, 2008, she obtained a temporary restraining order against Snow in Los Angeles, California, but that thereafter, Snow made false accusations to California's child protective services about alleged drug and alcohol abuse, which resulted in her arrest and the child being placed in foster care in California. She averred that she was tested for drugs and none were found in her system. She was released. After that time, she had unsupervised overnight visitation with the child for

about two months in California.

The Georgia court held an emergency hearing that same day on Ernst's motion to reconsider, but again, no sworn testimony was presented. Instead, the lawyers for both parties spoke. The child was still in foster care in California, and the court explained that the California court had indicated that it wanted the Georgia court to handle the custody issues. Snow's counsel admitted that Ernst had been arrested in California because, after Ernst failed to appear at the May 29 hearing, Snow himself contacted the California police and filed a warrant for her arrest based on her failure to appear. The parties agreed the child needed a guardian ad litem. The court then asked about additional family members, and Snow explained that his parents lived in Aiken, South Carolina, but that they were in California trying to bring the child back. Ernst's counsel explained that Ernst now lived in California and had no ties to the Augusta community.

The court stated that it was going to bring the child back from California, decide where the child was going to stay on a temporary basis, and have a guardian look into the situation. The court announced it was going to give temporary custody to the paternal grandparents in Aiken and get the guardian involved because "I don't know who to believe." The court stressed that the placement was temporary. The court provided for visitation for both parties with Snow's visitations to be supervised by his parents. Following accusations from both sides about drug and alcohol abuse, the court ordered both parents to submit to hair follicle tests that day. The court entered a written order to the same effect.

Ernst subsequently changed lawyers, and in January 2009, she filed a verified response to the original petition, a motion to dismiss the petition, and a counterclaim for sole custody based on allegations that Snow "is inherently violent and easily loses control and is a danger to [Ernst] and the child." She attached her own sworn declaration in which she averred that Snow used cocaine; that he was much bigger than she was; that he was verbally abusive to her; that he held a gun to her head on one occasion; that he threatened to kill her and her children; that he abused her physically, including picking her up by the neck and throwing her into a play pen injuring her back; that he had choked her and thrown her into walls; that on one occasion he choked her to unconsciousness; and that she was terrified and scared for her safety and the safety of her children. She also made averments about her departure from Georgia, her move to California, and the various court actions taken there.[1] She filed a

---

[1] She attached a copy of a hearing held on June 26, 2008 in the Superior Court of Los

motion for a custody evaluation, to which Snow filed an objection.

On March 17, 2009, each party was deposed. On March 19, the guardian ad litem published her report for the court, and on the same day, the court held its third hearing in this matter, which was initially intended to be the final hearing. The deposition transcripts were not available for the hearing, and the guardian's report apparently was only distributed during the hearing. At the hearing, Ernst requested a case management order and that she be allowed to resume custody of the child. Snow also requested custody. At the beginning of the hearing, the court announced that it would not consider moving the child back with the mother or back with the father. Colloquy ensued. Ernst asked the court to look into the allegations of abuse and to grant temporary custody to her. Ernst also asked that the child be allowed to visit her in California in June. The court indicated it would ask the guardian to consider the matter. Ernst argued that no evidence had ever been submitted to suggest that she was an unfit mother and her living arrangements in California had not been investigated by the guardian. Snow argued that the child should not go because Ernst was living with a new boyfriend and that she could visit the child in Georgia at any time. The court stated that it was going to let the guardian continue to investigate. Ernst argued that a final hearing was not appropriate until the child had spent some time with her in California. The guardian stated that she was concerned that the mother had taken the child to California with knowledge of the Georgia court proceedings and that she has moved around "living back and forth." The guardian did not want the now two-year-old child to be moved around any more than necessary. And the guardian wanted to ensure that Ernst was doing all she was asked to do, such as obtaining a driver's license.

Snow's counsel then asked the court to consider taking the guardian's recommendation and placing the child with him in Augusta. Snow spoke up and stated that he had driven to Aiken 140 days out of the 158 that the child had been with his parents and that he could care for the child in Augusta, including placing her in daycare for the time that he was at work. The guardian stated that she was inclined to allow that. Ernst objected to having to react to the guardian's report, which had only just been distributed. And she urged the court to leave the child where she was rather than with Snow because of the serious allegations against Snow. The court

---

Angeles County, California, at which both she and Snow gave sworn testimony. After that testimony, the California court found Ernst's testimony regarding domestic violence "slightly more credible." Accordingly, the court entered protective orders on her behalf requiring that Snow stay 75 yards away from her through September 1, 2009.

reiterated that it would consider a June visit to California but that it wanted to monitor Ernst's stability first.

The court then decided to give temporary custody to Snow and give Ernst liberal visitation rights. Ernst protested and argued that she was stable and that she and a witness would like to testify as to that stability. The court indicated that it wanted to wait to see how Ernst did between the hearing and summer. The court agreed that the summer hearing would not be a final hearing but only address summer visitation. Ernst again objected and argued that the placement was not in the best interest of the child because she had evidence to support allegations of physical abuse, domestic abuse and verbal abuse by Snow. The court then considered whether the guardian should go to California to assess Ernst's stability and living arrangements, which Ernst strongly supported. That matter was never resolved. The court issued a "Case Management Order" on April 29, 2009 consistent with the rulings it made at the hearing placing the child with Snow in Augusta with specified visitation rights for Ernst.

Ernst contends the court erred in granting legitimation and in making each change of custody because the court, in each instance, failed to consider the best interest of the child or take evidence or sworn testimony to support those decisions.[2] "We review a trial court's ruling on a legitimation petition for abuse of discretion." (Footnote omitted.) *Binns v. Fairnot,* 292 Ga. App. 336, 337 (665 SE2d 36) (2008).

1. In considering a legitimation petition,

> (t)he court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.

*In the Interest of M. K.,* 288 Ga. App. 71, 74 (2) (653 SE2d 354)

---

[2] Although Ernst failed to appear at the hearing, there is nothing in the record to suggest that the petition to legitimate was granted as a default judgment. Compare *Harold v. Harold,* 286 Ga. 175, 176 (686 SE2d 123) (2009) (in divorce matter, record showed entry of default judgment rather than judgment on the pleadings). Furthermore, in a legitimation action where allegations of family violence are raised, OCGA § 19-7-22 (f.1), and found to exist by the judge, the following obtains: "If a parent is absent or relocates because of an act of domestic violence by the other parent, such absence or relocation for a reasonable period of time in the circumstances shall not be deemed an abandonment of the child for the purposes of custody determination." OCGA § 19-9-3 (a) (4) (C).

(2007). "In making this determination, the court must examine the benefits that might flow to the child if she were legitimated and to consider the legal consequences of the grant of the petition." (Citations and punctuation omitted.) *Adamavage v. Holloway*, 206 Ga. App. 156, 157-158 (1) (424 SE2d 837) (1992). See also *In the Matter of J. M. S.*, 257 Ga. 630, 631 (362 SE2d 56) (1987) ("the issue is whether the trial court abused its discretion in determining that it was not in the best interest of the child to grant the petition for legitimation"); *Davis v. Labrec*, 274 Ga. 5, 7 (549 SE2d 76) (2001); *Ghrist v. Fricks*, 219 Ga. App. 415, 420 (1) (465 SE2d 501) (1995) ("a man has no absolute right to the grant of his petition to legitimate a child simply because he is the biological father"); OCGA § 19-7-20 (b) ("Where possibility of access exists, the strong presumption is in favor of legitimacy and the proof must be clear to establish the contrary.").

Here, the only evidence before the court at the May 29, 2008 "30 Day Conference" was the verified petition to legitimate the child. No witnesses were sworn and no other proper evidence was presented. Although the petition was verified, there is nothing in it about whether Snow had or had not abandoned his opportunity interest in the child. And the only statement in the petition regarding the child's best interest was the conclusory language of the preprinted form petition that "It is in the best interest of the minor child(ren) to have their legal custody placed with Petitioner." No admissible evidence regarding the child's best interest was offered.

Regardless of the fact that Ernst failed to appear at the conference, it is apparent that no evidence was presented regarding the issues necessary for a determination of whether to grant legitimation. The court therefore abused its discretion by granting the petition to legitimate. See, e.g., *In the Interest of M. K.*, 288 Ga. App. at 74 (2) ("court failed to determine if the putative father had abandoned his opportunity interest to develop a relationship with [child] and also failed to conduct a test of his fitness as a parent or make a determination based upon the best interests of [child]").

2. The trial court's orders on temporary custody arguably suffer from the same flaw. As in other settings, when custody is raised as a part of a petition for legitimation, the court determines custody "based on the best interests of the child standard." OCGA § 19-7-22 (f.1). Pretermitting that question, however, because we are vacating the grant of the petition to legitimate, all orders of the court dependent on that order are also vacated. Until legitimation is properly entered, only the mother is entitled to custody of the child. OCGA § 19-7-25.

3. Ernst contends the court erred by finding that she had been served with the petition to legitimate. She admits receiving a copy of

the summons and complaint but contends she was justified in leaving the state because she had legal custody of the child and was within her rights to leave Georgia and move to California. We find no authority for this argument as a reason for not appearing in court when properly served, as Ernst was. Nevertheless, we find no authority for granting legitimation by default. Therefore, this enumeration of error is without merit.

For the reasons set out above, we vacate the superior court's orders regarding legitimation and temporary custody and remand for proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Miller, C. J., and Johnson, J., concur.*

DECIDED JULY 13, 2010.

*John R. B. Long*, for appellant.
Nicholas Snow, *pro se*.