**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 18, 2021**

# In the Court of Appeals of Georgia

A21A0505. BELLIVEAU et al. v. FLOYD.

DILLARD, Presiding Judge.

Evelyn and Daniel Belliveau[1] appeal the trial court's order granting Wendell Floyd's petition to legitimate his biological child (who was born during the Belliveaus' marriage) and terminating Daniel's parental rights. In doing so, the Belliveaus argue that (1) they have standing to argue that genetic testing is not in the best interests of the child; (2) more than a putative father's biological connection with the child should be required to deligitimate a legal father; and (3) the trial court erred by not holding an evidentiary hearing on the matter. Because we agree that the trial court erred by failing to hold an evidentiary hearing, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

---

[1] For the sake of clarity, we will refer to the Belliveaus by their first names.

In 2016, the Belliveaus separated, and during that time, Evelyn had a romantic relationship with Floyd.[2] According to Floyd, Evelyn never told him that she was married. On November 17, 2016, as a result of their extramarital relationship, Floyd and Evelyn had a child together. Floyd was with Evelyn in the hospital when the child was born, and he was listed as the child's father on the birth certificate. The couple also executed a paternity acknowledgment, which was notarized. Floyd and Evelyn lived together with their child until he was six months old, but eventually, the Belliveaus reconciled and they have raised the child together since that time. And while Evelyn promised Floyd that she would not keep the child away from him or his family, Floyd has not been allowed to see the child since June 16, 2017. Additionally, at some point after she left Floyd, Evelyn filed a petition to change the child's last name to Belliveau, and it was granted. And because the child was born during the Beliveaus' marriage, Daniel was the child's legal father.[3]

---

[2] Because we are remanding this case to the trial court due to a procedural deficiency (*i.e.*, the trial court's failure to hold an evidentiary hearing on Floyd's legitimation petition), the underlying background regarding the parties' relationships is provided only for context and is not required for us to resolve this appeal.

[3] *See Baker v. Baker*, 276 Ga. 778, 779 (1) (582 SE2d 102) (2003) ("All children born in wedlock are deemed under law to be legitimate. A child's legal father is defined as the man married to the biological mother at the time the child was conceived or born, unless such paternity is disproved by final court order." (footnote

On November 6, 2017, Floyd filed a petition to legitimate the child in the superior court, and initially, the case was transferred to the juvenile court. While in that court, a guardian ad litem ("GAL") was appointed and genetic testing was performed. The GAL submitted a written report, and the testing confirmed that Floyd is indeed the child's biological father. Then, on November 13, 2018, the case was transferred back to the superior court, which, under "OCGA § 15-11-10 (3) (D), [has] . . . exclusive jurisdiction to decide termination of parental rights issues in legitimation cases."[4] And while a final hearing on the legitimation petition was scheduled, one was never held. Ultimately, the trial court granted Floyd's petition and terminated Daniel's parental rights in the same order. Subsequently, the Belliveaus filed a motion for reconsideration, and among other things, they argued that the court erred in failing to hold an evidentiary hearing prior to terminating Daniel's parental rights. But the trial court denied that motion.[5] This appeal follows.

---

omitted)).

[4] *Mathenia v. Brumbelow*, 308 Ga. 714, 720 (3) (a) (843 SE2d 582) (2020).

[5] As discussed more fully *infra*, after granting Floyd's legitimation petition, the court held a hearing solely on the issues of custody and visitation. In this appeal, the Belliveaus only appeal the court's order on the issue of legitimation, which was issued *prior* to the aforementioned hearing.

3

We review a trial court's ruling on a legitimation petition for abuse of discretion,"[6] but the court's factual findings are "reviewed for clear error and will be sustained only if there is competent evidence to support them."[7] With these guiding principles in mind, we will now consider the Belliveaus' claims of error.

1. The Belliveaus argue that the trial court erred in ordering genetic testing without determining whether it was in the best interests of the child. We disagree.

In making this claim of error, the Belliveaus ignore the plain language of OCGA § 19-7-22 (h), which provides, in part, that "[i]n determining the best interests of the child, the court should ensure that the petitioning alleged biological father is, in fact, the biological father and may order the mother, the alleged biological father, and the child to submit to genetic testing in accordance with Code Section 19-7-45." Indeed, their opening brief does not even mention this statute, which plainly states that genetic testing should be considered *in determining the best interests of the child.* Thus, genetic testing was necessary to prove that Floyd was, in fact, the child's

---

[6] *Neill v. Brannon*, 320 Ga. App. 820, 822 (1) (738 SE2d 724) (2013) (punctuation omitted).

[7] *Id.*

biological father *before* the trial court could consider whether legitimation was in the best interests of the child.

Even so, rather than addressing the mandate in OCGA § 19-7-22 (h), the Belliveaus rely on cases decided well before July 1, 2016—the statute's effective date.[8] But those cases do not involve a biological father seeking to legitimate a child. Instead, they concern mothers seeking to *deligitimate* the child's legal father.[9] In any event, to the extent those cases are in conflict with OCGA 19-7-22 (h), they have been abrogated by that statute. Suffice it to say, if the words of a statute are "plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words."[10] We are bound, then, to follow the plain language of OCGA § 19-7-22 (h),

---

[8] *See Baker*, 276 Ga. 778; *Davis v. LaBrec*, 274 Ga. 5 (549 SE2d 76) (2001); *Williamson v. Williamson*, 302 Ga. App. 115 (690 SE2d 257) (2010).

[9] *See Davis*, 274 Ga. at 5 (addressing the mother's petition to deligitimate a child's biological father whose prior legitimation petition had been granted); *Williamson*, 302 Ga. App. 117 (2) ("In this case, similarly to the situation in *Baker*, the trial court is faced with a situation where the mother of a child presumed to be legitimate sought paternity testing in order to deligitimate the child by claiming that her husband at the time of the child's conception and birth, although the legal father, is not the biological father.").

[10] *Ga. Pac. Consumer Prod., LP v. Ratner*, 345 Ga. App. 434, 438 (1) (a) (812 SE2d 120) (2018); *accord Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999).

which permitted the court to order genetic testing in determining whether Floyd, rather than Daniel, was the child's biological father.

2. The Belliveaus also argue that the trial court erred by delegitimizing Daniel and granting Floyd's legitimation petition based solely on initial pleadings, unproven allegations in briefs, and the GAL's written report. We agree.

OCGA § 19-7-22 sets forth the procedure a biological father must follow to legitimate a child. Specifically, under OCGA § 19-7-22 (d) (1),

> [u]pon the presentation and filing of a legitimation petition, *and after a hearing for which notice was provided to all interested parties*, the court may issue an order declaring the biological father's relationship with the child to be legitimate, provided that such order is in the best interests of the child. . . .[11]

Needless to say, when a statute (like this one) is in derogation of the common law, it "must be strictly construed."[12] Indeed, ]if the words of a statute are "plain and capable of having but one meaning, and do not produce any absurd, impractical, or

---

[11] (Emphasis supplied).

[12] *In re Pickett*, 131 Ga. App. 159, 160 (205 SE2d 522) (1974) (interpreting former code section on legitimation); *see Parke v. Fant*, 260 Ga. App. 84, 85-86 (1) (578 SE2d 896) (2003) ("It is well established that when a statute is in derogation of the common law, we strictly construe the statute.").

6

contradictory results, then this Court is bound to follow the meaning of those words."[13]

And here, there is nothing ambiguous about OCGA §19-7-22 (d) (1)'s requirement that a trial court may only declare a biological father's relationship with a child to be legitimate *after a hearing* for which notice was provided to all interested parties. And although the trial court mentions a hearing, in passing, at the outset of its order, it is undisputed that no evidentiary hearing was held regarding Floyd's legitimation petition. To the contrary, later in the court's order, it notes:

> A final hearing was scheduled, but prior to evidence being presented, counsel for [the Belliveaus] requested the opportunity to brief the issue of terminating [Daniel's] parental rights and delegitimation of the minor child. As both sides have fully *briefed* the issue, the matter is now ripe for ruling."[14]

The trial court also specified that—in ruling on Floyd's legitimation petition—it had "take[n] into consideration the [GAL]'s report that was filed in this case, as well as affidavits submitted by the parties . . . ." And the court's order does not say that it

---

[13] *Ratner*, 345 Ga. App. at 438 (1) (a); *accord Busch*, 271 Ga. at 592.

[14] (Emphasis supplied).

considered any testimony or evidence presented at a hearing.[15] As a result, the court

erred in granting Floyd's legitimation petition without first holding an evidentiary

hearing.

Furthermore, Georgia Uniform Superior Court Rule ("USCR") 24.9 (6) sets

forth the requirements for the admissibility of the GAL's report at a trial, and in

relevant part, it states "the recommendations of the GAL are not a substitute for the

court's independent discretion and judgment, *nor is the report a substitute for the*

*GAL's attendance and testimony at the final hearing*, unless all parties otherwise

---

[15] On appeal, Floyd does not dispute that no evidentiary hearing was held on his legitimation petition, but he claims there was "an abundance of evidence in the record to support the [t]rial [c]ourt's decision." But Floyd defines the evidence as bench briefs, affidavits, the GAL's written report, and pleadings. Floyd notes that at the custody and visitation hearing, the court found the parties agreed that, in ruling on the legitimation petition, it would rely on briefs, affidavits, and the GAL's written report. It appears from the record that this alleged agreement was made in chambers and the discussion was not transcribed. But to the extent there was any confusion regarding their right to a hearing, the Belliveaus repeatedly argued to the trial court in their motion for reconsideration and during the custody and visitation hearing that they were entitled to one. So, unlike the trial court's recollection of an untranscribed hearing, the Belliveaus assertion of their right to a hearing was both in the record and transcribed. And given these express requests and OCGA § 19-7-22 (d)(1)'s *mandate* that a hearing be held with notice to all interested parties prior to legitimating a putative father, we reject any suggestion that the Belliveaus forfeited their right to an evidentiary hearing.

8

agree."[16] And because the trial court did not hold an evidentiary hearing, the GAL report served as a substitute for hearing testimony in violation of this rule. Also, contrary to USCR 24.9 (6), the Belliveaus were unable to use the GAL report for "direct evidence, impeachment evidence, or for any other purposes" at trial. Thus, the trial court erred by relying on the GAL's written report without holding a hearing, which the GAL could attend, testify, and be subject to cross-examination.

Lastly, it is unclear from the trial court's order that it applied the correct legal standard in determining whether legitimation is warranted. As recently explained by our Supreme Court, "unwed fathers possess an opportunity interest to develop a relationship with their children that is protected by due process of law."[17] This opportunity interest "begins at conception and endures probably throughout the minority of the child[,] [b]ut it is not indestructible."[18] Some factors which may support a finding of abandonment include, without limitation, "a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and

---

[16] (Emphasis supplied).

[17] *Mathenia*, 308 Ga. at 720-21 (3) (b) (punctuation omitted).

[18] *Id.* (punctuation omitted).

9

a lack of contact with the child."[19] And if the trial court concludes that the biological father has not abandoned this opportunity interest, it must also determine whether legitimation is in the best interests of the child.[20]

Here, the trial court's order states that "[t]he issue of abandonment is not before the [c]ourt at this time[,]" and it also found that, if it was, Floyd had not abandoned his right to seek legitimation of the child. But as detailed *supra*, the issue of whether a biological father has abandoned his opportunity interest in developing a relationship with his child is at issue in *every* case. Such a determination must be made, then, before the court considers whether legitimation is in the child's best interests. So, while the evidence might ultimately support the trial court's conclusion that Floyd has not abandoned his opportunity interest in a relationship with his child, no such evidence currently exists because no evidentiary hearing was held.

---

[19] *Id*. (punctuation omitted).

[20] *See* OCGA § 19-7-22 (d) (1) (providing, in part, that "the [trial] court may issue an order declaring the biological father's relationship with the child to be legitimate, *provided that such order is in the best interests of the child . . .*" (emphasis supplied)); *Westbrook v. Eidys*, 356 Ga. App. 619, 624 (3) (848 SE2d 660) (2020) (vacating an order granting a legitimation petition when the trial court determined that the biological father had not abandoned his opportunity interest in a relationship with the child, but granted the petition without also considering whether doing so was in the best interests of the child).

In sum, the trial court erred in granting Floyd's legitimation petition and terminating Daniel's parental rights without first holding an evidentiary hearing on the matter.[21] As a result, we vacate the trial court's order granting Floyd's legitimation petition and remand this case for further proceedings consistent with this opinion.

3. Finally, the Belliveaus argue that more than a legal father's mere biology should be required to deligitimate a legal father. Indeed, as evidenced by the legal standard for legitimation set forth *supra*, there are several other factors to consider, including the best interests of the child. But because we are vacating the trial court's order and remanding the case for further proceedings, it is premature to conclude that the only factor taken into account by the trial court will be Floyd's biological connection with the child. And nothing in the court's initial order suggests it limited its consideration of the case in that way.

Additionally, couched within this claim of error, the Belliveaus maintain that the trial court must determine whether deligitimizing a legal father is in the child's

---

[21] *See Ernst v. Snow*, 305 Ga. App. 194, 198 (1) (699 SE2d 401) (2010) (holding that the trial court abused its discretion by granting a petition to legitimate when no witnesses were sworn and no admissible evidence regarding the child's best interest was offered).

best interests *prior to* determining whether legitimizing a biological father is in the child's best interests. But once again, because we are vacating the trial court's order and remanding the case for further proceedings, we need not address this argument. Nevertheless, we note that the Supreme Court of Georgia has held that "[t]o grant [a] legitimation petition require[s] the superior court to first terminate the parental rights of the legal father."[22]

For all these reasons, we vacate the trial court's order granting Floyd's legitimation petition and remand for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Mercier and Colvin, JJ., concur.*

---

[22] *Brine v. Shipp*, 291 Ga. 376, 380 (3) (729 SE2d 393) (2012), *superseded by statute on other grounds as recognized by Mathenia v. Brumbelow*, 308 Ga. 714 (843 SE2d 582) (2020); *see Mathenia*, 308 Ga. at 720 (3) (a) ("It should be clear . . . that a superior court normally could not grant a biological father's legitimation petition without first terminating the legal father's parental rights.").