308 Ga. 714
FINAL COPY

S19G0426. MATHENIA et al. v. BRUMBELOW.

MELTON, Chief Justice.

This case stems from an action in which Joshua Brumbelow petitioned the Superior Court of Habersham County to legitimate his biological son, E. M.[1] The superior court denied the petition, concluding that, under *In re Eason*, 257 Ga. 292 (358 SE2d 459) (1987), Brumbelow had abandoned his opportunity interest to pursue a relationship with his son. Brumbelow appealed to the Court of Appeals, alleging that the trial court erred in finding that he had abandoned his opportunity interest. The Court of Appeals agreed and reversed the trial court's decision. See *Brumbelow v. Mathenia,* 347 Ga. App. 861 (2) (819 SE2d 535) (2018). The Court of

---

[1] The petition was originally filed in the Superior Court of Stephens County on August 23, 2016, but was transferred to the Superior Court of Habersham County for a final hearing. The Stephens County Superior Court transferred the petition to Habersham County because E. M. was living in Habersham County at that time with a couple, Lance and Ashley Hall, who wished to adopt him. The parties do not dispute that the Halls filed their petition to adopt on September 1, 2016, but the actual adoption petition does not appear in the record for the legitimation action.

Appeals further remanded the case to the trial court to determine whether Brumbelow's legitimation petition should be granted based on Brumbelow being a fit parent for E. M., instead of being evaluated under the best interests of the child standard. Id. at 879 (3).

We granted certiorari to decide two issues: (1) whether the Court of Appeals erred in reversing the superior court's decision that Brumbelow had abandoned his opportunity interest to pursue a relationship with his son; and (2) if not, whether the Court of Appeals properly concluded that Brumbelow's legitimation petition must be assessed on remand under the parental fitness standard rather than the best interests of the child standard. For the reasons that follow, we conclude that, because evidence supported the superior court's finding that Brumbelow abandoned his opportunity interest, the superior court did not abuse its discretion in denying the legitimation petition. Accordingly, the Court of Appeals erred in its decision on that issue, and we must reverse that portion of the Court of Appeals' judgment. With respect to the second question, we conclude that the portion of the Court of Appeals' opinion relating to

the standard that must be applied to assess a biological father's right to custody of his child in a legitimation action should be viewed as dicta only.

1. *Standard of Review.*

An appellate court reviews a trial court's decision on a legitimation petition

> for abuse of discretion only. Moreover, "factual findings made after a hearing shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them."

(Citations omitted.) *Matthews v. Dukes*, 314 Ga. App. 782, 786 (1) (726 SE2d 95) (2012), overruled on other grounds by *Brine v. Shipp*, 291 Ga. 376, 380 (3) (729 SE2d 393) (2012). "On appeal of an order denying a petition to legitimate . . . , the evidence must be viewed in the light most favorable to the [trial] court's ruling." (Citation and punctuation omitted.) *In the Interest of J. M.*, 289 Ga. App. 439, 439 (657 SE2d 337) (2008).

The Court of Appeals' opinion in this case included analysis of

evidence that the superior court did not mention in its order —

testimony and other evidence the superior court was entitled to

discredit or afford no significant weight. See generally *Brumbelow*,

supra, 347 Ga. App. at 862-864. We thus limit our discussion below

to the facts as found by the superior court and supported by the

evidence, viewed in the light most favorable to the superior court's

ruling. *Matthews*, supra, 314 Ga. App. at 786 (1). As we have

previously explained, with respect to evidence of record not

referenced in a trial court's findings of fact:

> We do not know — and the . . . Court of Appeals could not
> have known — exactly why the trial court said nothing
> about these things. But we do know that the trial court
> *could* have assigned no weight at all to the testimony of
> the [witnesses] about these things to the extent that it
> found that their testimony was not credible. See *Tate*[ *v.
> State*], 264 Ga. [53, 56 (3) (440 SE2d 646) (1994)]
> ("Credibility of witnesses and the weight to be given their
> testimony is a decision-making power that lies solely with
> the trier of fact. The trier of fact is not obligated to believe
> a witness even if the testimony is uncontradicted and may
> accept or reject any portion of the testimony." (Citation
> omitted)).

(Emphasis in original.) *Hughes v. State*, 296 Ga. 744, 747 (770 SE2d

636) (2015) (decided in the context of a motion to suppress).[2] See also

*Chalk v. Poletto*, 346 Ga. App. 491, 495 n.11 (816 SE2d 432) (2018)

(In deciding whether a biological father in a legitimation action has

abandoned his opportunity interest, the "[c]redibility of witnesses

and the weight to be given their testimony is a decision-making

power that lies solely with the trier of fact. The trier of fact is not

obligated to believe a witness even if the testimony is uncontradicted

and may accept or reject any portion of the testimony.") (citation and

punctuation omitted). "Unless [the trial court's] findings of fact . . .

are shown to be clearly erroneous or wholly unsupported by

evidence[, an appellate court] cannot substitute its judgment for

that exercised by the trial court in its findings of fact." *Parr v. Jones*,

163 Ga. App. 597, 598 (295 SE2d 570) (1982). See also *Matthews*,

supra, 314 Ga. App. at 786 (1) (where "any evidence" supports the

superior court's findings, those findings must be accepted).[3]

---

[2] We cite to *Hughes* only to emphasize the deference that appellate courts must give to trial courts with regard to findings of fact supported by the evidence and to remind appellate courts not to engage in the inappropriate practice of making independent findings.

[3] The dissent contends that we have not sufficiently recognized "the

2. *Factual Background.*

Viewed in the light most favorable to the superior court's ruling and factual findings, the evidence presented at the hearing on Brumbelow's legitimation petition showed the following: In late 2015, Jeannie Mathenia became pregnant with E.M. after a one-time sexual encounter with Brumbelow. Mathenia was married to a different man at the time that she became pregnant with Brumbelow's child,[4] and she remained married to her husband after E. M. was born. Thus, there is a statutory presumption that Mathenia's husband is E. M.'s legal father. See OCGA § 19-7-22 (a)

ability of appellate courts to notice some undisputed facts not rejected by a trial court." Dissent at 728. This is untrue. While "an appellate court properly may take notice of the undisputed facts," *Hughes*, supra, 296 Ga. at 746 (1) n.4, appellate courts cannot use those undisputed facts to make alternative findings of fact that are contrary to those explicitly or implicitly made by the trial court where other evidence exists that supports the trial court's findings. See *Matthews*, supra, 314 Ga. App. at 786 (1). In this regard, this case is not one in which we are simply reviewing the sufficiency of the evidence, as the dissent contends, but one in which we are clarifying the appropriate standard of review to be utilized by appellate courts.

[4] The superior court expressly found, and the parties do not dispute, that Brumbelow is the biological father of E. M. See OCGA § 19-7-22 (a) (1) ("'Biological father' means the male who impregnated the biological mother resulting in the birth of a child.").

(2) (B) ("'Legal father' means a male who has not surrendered or had terminated his rights to a child and who . . . [w]as married to the biological mother of such child at the time such child was born or within the usual period of gestation, unless paternity was disproved by a final order pursuant to Article 3 of this chapter").[5]

As soon as Mathenia found out she was pregnant, which was approximately six weeks after conception, she informed Brumbelow of the pregnancy. Brumbelow denied that the child was his, but attended one of Mathenia's doctor's appointments in an attempt to figure out how far along Mathenia was in the pregnancy in order to determine if he could be the father. At that point, Brumbelow offered to pay for Mathenia to have an abortion. Mathenia refused, and, from that point on, Brumbelow did not visit Mathenia, inquire about her well-being, or offer her any emotional or financial support, even though Brumbelow was employed and capable of providing such

---

[5] Although Mathenia's husband was a named party in the legitimation action, the record does not reveal whether Mathenia's husband has surrendered his parental rights or had his parental rights terminated. So, we must assume that his parental rights have not been terminated.

support.[6]

Lance and Ashley Hall planned to adopt E. M. After E. M. was born on July 10, 2016, Mathenia surrendered her parental rights to E. M., and the child went home with the Halls. E. M. has remained in the Halls' exclusive care and custody ever since. At some point after E. M. was born and before Brumbelow filed his petition to legitimate E. M. on August 23, 2016, Brumbelow's mother got in touch with Mathenia and arranged for Mathenia to meet with Brumbelow at his attorney's office. Brumbelow requested visitation with E. M. only once, through his attorney, on December 29, 2016.[7]

---

[6] The superior court expressly found not credible Brumbelow's assertion that he did not have the ability to get in touch with Mathenia throughout the pregnancy, especially in light of the fact that Brumbelow's mother was able to get in touch with Mathenia soon after E. M. was born. In this regard, the dissent's statement that the undisputed evidence showed that Mathenia "did not want the biological father to contact her" (Dissent at 728) is belied by the record, and it cannot be used as a basis for making a finding contrary to the ones made by the trial court. The dissent downplays the Court of Appeals' finding, contrary to the findings of the trial court, that "Mathenia 'cut off all contact' with Brumbelow . . . [and] *[a]s a result*, during the entirety of Mathenia's pregnancy, Brumbelow never asked about her well-being or if she needed anything." (Emphasis supplied.) *Brumbelow*, supra, 347 Ga. App. at 862 See also id. at 870-871 (2). It was for the superior court to determine how to view the mother's statements and what weight to give them in relation to Brumbelow's efforts (or lack thereof) to contact her and provide support.

[7] The superior court's order lists the date as December 29, 2017, but this

The superior court found that Brumbelow had abandoned his opportunity interest in E. M. and that denying the petition for legitimation was in E. M.'s best interest.

3. *Analysis.*

(a) *Jurisdiction.*

As an initial matter, we must resolve an issue that the Court of Appeals did not consider: whether the superior court had jurisdiction to decide Brumbelow's legitimation petition. We conclude that it did. "Although the parties have not raised any objections to jurisdiction, subject matter jurisdiction cannot be waived or conferred on a court by agreement." (Citations omitted.) *Brine*, supra, 291 Ga. at 377 (1). See also OCGA § 15-1-2 ("Parties may not give jurisdiction to a court by consent, express or implied, as to the . . . subject matter of an action."). And, "[i]n the context of domestic relations cases, this Court has held that jurisdiction, whether subject-matter or personal, is dependent upon the state of things at the time that an action is filed." (Citation omitted.)

is clearly a scrivener's error, as the order itself was entered on July 21, 2017.

*Plummer v. Plummer*, 305 Ga. 23, 27 (2) (a) (823 SE2d 258) (2019).

Our jurisdictional analysis begins with our decision in *Brine*, supra, 291 Ga. at 380 (3), in which we held that the superior court did *not* have jurisdiction to decide the legitimation petition of a biological father whose child was born to a mother who was married at the time the child was born. This was so because

> the biological father's petition to legitimate a child who was born in wedlock [was] in essence a petition to terminate the parental rights of the legal father. . . . Since all children born in wedlock are deemed legitimate by law, the superior court was faced with a situation where the biological father of [the] child sought to delegitimate the child and sever an existing father-child relationship. See *Baker v. Baker*, 276 Ga. [778, 781 (1) (582 SE2d 102) (2003)]; *Davis v. LaBrec*, 274 Ga. [5, 7 (549 SE2d 76) (2001)]. To grant the legitimation petition required the superior court to first terminate the parental rights of the legal father.

*Brine*, supra, 291 Ga. at 379-380 (3). Importantly, under the version of OCGA § 15-11-28 that existed at the time that *Brine* was decided in 2012, "juvenile courts [had] exclusive jurisdiction over the termination of parental rights except in connection with adoption

proceedings." Id. at 377 (1).[8] Accordingly, the superior court in *Brine*

"[did] not have jurisdiction over the termination decision" in the

legitimation action and could not decide the legitimation petition on

the merits. Id. at 380 (3).

However, the law has changed since our decision in *Brine*.

OCGA § 15-11-28 was replaced by OCGA § 15-11-10 (3) (D), which

became effective on May 5, 2015, *before* the legitimation petition was

filed in this case:

> Except as provided in Code Section 15-11-560 [concurrent jurisdiction with superior courts in certain juvenile matters involving crimes], the juvenile court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action . . . [i]nvolving any proceedings . . . [f]or the termination of the legal parent-child relationship and the rights of the biological father who is not the legal father of the child in

[8] Former OCGA § 15-11-28 (a) (2) (C) provided:
Except as provided in subsection (b) of this Code section, the [juvenile] court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action . . . [i]nvolving any proceedings . . . [f]or the termination of the legal parent-child relationship and the rights of the biological father who is not the legal father of the child, other than that in connection with adoption proceedings under Article 1 of Chapter 8 of Title 19, in which the superior courts shall have concurrent jurisdiction to terminate the legal parent-child relationship and the rights of the biological father who is not the legal father of the child.

accordance with Article 4 of this chapter; provided, however, that such [exclusive] jurisdiction [of the juvenile court] *shall not affect the superior court's exclusive jurisdiction to terminate the legal parent-child relationship and the rights of a biological father who is not the legal father of the child as set forth in Chapters 6 through 9 of Title 19.*

(Emphasis supplied.) Within the chapters of Title 19 where superior courts retain jurisdiction "to terminate the legal parent-child relationship" pursuant to OCGA § 15-11-10 (3) (D) is Chapter 8, which deals with "Adoption." Thus, as was the case under former OCGA § 15-11-28, under OCGA § 15-11-10 (3) (D) superior courts continue to have jurisdiction "to terminate the legal parent-child relationship and the rights of a biological father who is not the legal father of the child" in adoption cases.[9]

---

[9] We note that, despite the fact that the Halls filed a petition to adopt E. M. in the same superior court that decided Brumbelow's legitimation petition, the Halls' filing would not show, under the circumstances presented in this case, that the superior court had jurisdiction to decide Brumelow's legitimation petition. While it is true that superior courts continue to have jurisdiction to terminate a legal father's parental rights in "adoption" cases, see OCGA § 15-11-10 (3) (D), Brumbelow filed his legitimation petition *before* any formal adoption proceedings were initiated by the Halls. Accordingly, Brumbelow's petition was *not* filed "in connection with adoption proceedings." *Brine*, supra, 291 Ga. at 377 (1). Because jurisdiction here "depend[s] upon the state of things at the time that [Brumbelow's] action [was] *filed*," *Plummer*, supra, 305 Ga. at 27 (2) (a) (emphasis supplied), it cannot be said that the superior court would

But, unlike former OCGA § 15-11-28, OCGA § 15-11-10 (3) (D) does not *limit* the jurisdiction of superior courts to termination of parental rights *only* in adoption cases. To the contrary, OCGA § 15-11-10 (3) (D) *expands* the jurisdictional reach of superior courts to resolve termination of parental rights issues beyond Chapter 8 of Title 19, and now includes matters under "*Chapters 6 through 9 of Title 19.*" (Emphasis supplied.)

In this regard, Article 2 of Chapter 7 of Title 19 deals specifically with "Legitimacy" and the procedures governing legitimation. See OCGA §§ 19-7-20 to 19-7-27. Thus, pursuant to OCGA § 15-11-10 (3) (D), superior courts have been granted exclusive jurisdiction to decide termination of parental rights issues in legitimation cases. Accordingly, the superior court here had jurisdiction to rule upon the termination of the parental rights of E. M.'s legal father in connection with the legitimation proceedings initiated by Brumbelow.[10] To the extent that *Brine,* supra, can be

have had jurisdiction to decide the legitimation petition based on its potential jurisdiction over an adoption action that had not yet been filed.
    [10] To that end, the legitimation statute protects the interests of legal

read to support the proposition that superior courts have jurisdiction only to decide legitimation petitions "in connection with adoption proceedings," id. at 377 (1), it has been superseded by statute. See OCGA § 15-11-10 (3) (D).

(b) *Merits.*

Turning to the merits of the superior court's decision to deny Brumbelow's legitimation petition, this Court has held that "unwed fathers possess an opportunity interest [to develop a relationship with their children that is] protected by due process of law." *Eason*, 257 Ga. at 297 (1). "This opportunity interest begins at conception and endures probably throughout the minority of the child. But it is

---

fathers by requiring that they be served with the legitimation petition and named as a party, allowing their parental rights to be adjudicated. See OCGA § 19-7-22 (c) ("If there is a legal father who is not the biological father, he shall be named as a party by the petitioner and shall be served and provided an opportunity to be heard as in other civil actions under Chapter 11 of Title 9, the 'Georgia Civil Practice Act.'"). E. M.'s legal father, Corey Mathenia, was served and made a party to Brumbelow's legitimation action, but he did not file an answer or appear in the proceedings. However, the superior court did not need to reach any issue regarding the termination of the legal father's parental rights in this case because the court *denied* Brumbelow's legitimation petition. It should be clear, however, that a superior court normally could not *grant* a biological father's legitimation petition without first terminating the legal father's parental rights. See *Brine*, supra, 291 Ga. at 380 (3).

not indestructible." Id. at 296 (1). Indeed, an unwed father's opportunity interest can be abandoned "if not timely pursued." Id. "Factors which may support a finding of abandonment include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child." (Footnotes omitted.) *Morris v. Morris*, 309 Ga. App. 387, 389 (2) (710 SE2d 601) (2011).

Here, Brumbelow did not delay long in filing his legitimation petition — filing it about six weeks after E. M. was born — and the superior court concluded in its order that this filing "slightly moved [Brumbelow] . . . from [being the type of] father who has developed absolutely no relationship" with his child to one who expressed some desire to have more than just a biological relationship with the child.[11] However, there are other circumstances that support the

[11] The Court of Appeals asserted that "the trial court failed to give any meaningful consideration to Brumbelow's decision to file a legitimation petition shortly after E. M.'s birth." *Brumbelow*, supra, 347 Ga. App. at 869 (2). However, the portion of the superior court's order quoted above shows that the trial court did consider the timing of the filing. The *weight* to accord the timing of the filing, in the context of all of the other evidence presented at the legitimation hearing, was for the superior court to decide. As the Court of Appeals recognized elsewhere in its opinion, "of course, it is the trial court, not

superior court's ultimate finding that Brumbelow abandoned his opportunity interest to develop a relationship with E. M. First, the superior court found, with support in the record, that the only financial support that Brumbelow offered Mathenia during her pregnancy was to pay for an abortion, which does not show that he wanted to pursue a relationship with his child. See *Eason*, supra, 257 Ga. at 296 (1) ("If [a biological father] grasps [his] opportunity [interest] and accepts some measure of responsibility *for the child's future*, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development.") (emphasis supplied). Rather, the offer indicated that Brumbelow wanted no relationship at all with E. M., as an abortion would have ensured that no relationship could ever develop. Brumbelow also did nothing else to support Mathenia throughout the pregnancy despite, as the court expressly found, having the ability to contact her. See, e.g., *Turner v. Wright*, 217 Ga. App. 368,

---

[the appellate court], that determines how much weight to give to the evidence." (Citation omitted.) Id. at 870 (2) n.34.

369 (1) (457 SE2d 575) (1995) (explaining that an unwed father's "disregard of his opportunity interest during [the mother's] pregnancy is as significant as such a disregard after the child is born") (citation omitted). Supporting Mathenia during her pregnancy was an important way that Brumbelow could have shown interest in the welfare of E. M. before the child was born, as one's opportunity interest "begins at conception" and may be pursued as soon as the father learns a child has been conceived. *Eason*, 257 Ga. at 296 (1). See also *Adoption of Michael H.*, 898 P2d 891, 899-900 (III) (Cal. 1995) (citing *Eason* and other cases for the proposition that "states have . . . insisted that unwed fathers must assume their parental responsibilities promptly during pregnancy"). Mathenia informed Brumbelow that he was E. M.'s father as soon as she found out that she was pregnant, just six weeks after E. M.'s conception. Furthermore, the fact that Brumbelow's *mother* communicated with Mathenia after E. M.'s birth does not demonstrate *Brumbelow's* efforts to pursue a relationship with his child. *Eason*, supra, 257 Ga. at 296 (1) (explaining that an opportunity interest "is an interest

which an *unwed father has a right to pursue* through *his* commitment to becoming a father in a true relational sense as well as in a biological sense") (emphasis supplied).[12]

This is not a case where the mother prevented the father from developing a relationship with his child despite the father's clear desire to do so during the pregnancy.[13] Cf. *Bowers v. Pearson*, 271 Ga. App. 266 (609 SE2d 174) (2005) (unwed father did not abandon

---

[12] The Court of Appeals asserted that the trial court should not have "discounted" the actions of Brumbelow's mother "*on her son's behalf . . .* to preserve his opportunity interest in a relationship with E. M." (Emphasis supplied.) *Brumbelow*, supra, 347 Ga. App. at 870 (2). However, again, it was for the superior court, and not the Court of Appeals, to determine the weight to give to the evidence of Brumbelow's mother's actions; the superior court made no finding that Brumbelow's mother's actions were taken "on [his] behalf"; and even if Brumbelow's mother's actions were somehow meant to help him, that still would not necessarily say anything about Brumbelow himself making his own effort to grasp *his* opportunity interest to establish a relationship with *his* child.

[13] The Court of Appeals extensively discussed the evidence presented at the hearing and concluded that Mathenia made it "difficult for Brumbelow to contact or assist her during the pregnancy." *Brumbelow*, supra, 347 Ga. App. at 870 (2). But the trial court made no such finding. Instead, the trial court found that "at all times relevant [to the case, Brumbelow] had the ability to contact Ms. Mathenia and . . . he had the means to provide support[,] . . . [but Brumbelow] knowingly and willfully failed to do either," and this finding was supported under the "any evidence" standard. See *Matthews*, supra, 314 Ga. App. at 786 (1) ("The appellate courts will not disturb fact findings of a trial court if there is *any evidence* to sustain them.") (citations and punctuation omitted; emphasis supplied). See also *Hughes*, supra, 296 Ga. at 747.

opportunity interest where he consistently expressed desire to be recognized as child's father during mother's pregnancy but mother and her parents blocked father from having any involvement, financial or otherwise). Here, Brumbelow showed no interest in "becoming a father in a true relational sense," *Eason*, supra, 257 Ga. at 296 (1), throughout Mathenia's pregnancy, and seemingly expressed an interest only upon discovering that the child would be placed for adoption — and then only by filing a legitimation petition, not by offering financial or other support or seeking visitation with the child (except once five months after the child was born). Under all of these circumstances, we cannot say that evidence did not support the superior court's ultimate finding that Brumbelow abandoned his opportunity interest to pursue a relationship with E. M. See, e.g., *Turner*, supra, 217 Ga. App. at 369 (1) (despite filing legitimation petition one month after child was born, father abandoned his opportunity interest through his own choice to commit a criminal act that deprived him of the opportunity to support the mother during her pregnancy or develop a relationship

with his child). See also *M.V.S. v. V.M.D.*, 776 S2d 142, 147-148 (Ala. Civ. App. 1999) (opportunity interest abandoned where mother refused to consent to abortion, and father cut off relationship with mother, closed bank account he had previously opened for her, did not arrange for prenatal care for the mother, only visited child three times, and only offered limited support for nine months after child was born). The Court of Appeals erred in concluding otherwise.[14]

---

[14] We also point out that the Court of Appeals erred in holding that

> the trial court applied the wrong legal standard in finding that [Brumbelow] abandoned his opportunity interest in developing a relationship with E. M. by basing its decision on everything he did *not* do to pursue that interest, rather than all of the things he did to pursue a parent-child relationship with the child . . . [because] the appropriate inquiry is not whether the father could have done more, but rather whether the father has *done so little as to constitute abandonment.*

(Punctuation and footnote omitted; emphasis in original.) *Brumbelow*, supra, 347 Ga. App. at 868 (2). The superior court considered both the things that Brumbelow did do (i.e., filing a legitimation petition and attending one doctor's visit) and did not do (i.e., failing to visit E. M. and failing to support Mathenia or E. M. in any way during pregnancy or after birth) to develop a relationship with E. M., which was exactly what the superior court was supposed to do in reaching its finding on abandonment of opportunity interest. See, e.g., *Morris*, supra, 309 Ga. App. at 389 (2) ("Factors which may support a finding of abandonment include, without limitation, a biological father's *inaction* during pregnancy and at birth, a delay in filing a legitimation petition, and a *lack of contact* with the child.") (footnotes omitted; emphasis supplied). The superior court did not apply an incorrect legal standard, as there is not a different legal standard applicable to the evaluation of a biological father's inactions versus

Accordingly, we reverse that portion of the Court of Appeals' decision.

4. Because we have determined that evidence supported the trial court's conclusion that Brumbelow abandoned his opportunity interest, we would not necessarily be required to resolve the remaining issue of whether the Court of Appeals properly concluded that Brumbelow's legitimation petition must be assessed on remand under the parental fitness standard. See *Neill v. Brannon*, 320 Ga. App. 820, 821-822 (1) (738 SE2d 724) (2013) ("If the evidence supports a finding that [the unwed] father has abandoned his opportunity interest in developing a relationship with his biological child, then the court is authorized to end its inquiry and to deny the legitimation petition on that basis."). However, because the Court of

---

his actions. The cases on which the Court of Appeals relied for the proposition that the trial court applied an incorrect legal standard are disapproved to the extent that they can be read as the Court of Appeals read them in its opinion. See *Magdangal v. Hendrix*, 313 Ga. App. 522, 525 (1) (722 SE2d 130) (2012); *Caldwell v. Meadows*, 312 Ga. App. 70, 73 (1) (717 SE2d 668) (2011); *Morris*, supra, 309 Ga. App. at 390 (2); *Binns v. Fairnot*, 292 Ga. App. 336, 338 (665 SE2d 36) (2008). Thus, rather than only reviewing the sufficiency of the evidence, as the dissent suggests, we granted certiorari in this case to correct the Court of Appeals' misunderstanding and misapplication of the applicable standard of review. See, e.g., *Hughes*, supra, 296 Ga. at 744-745.

Appeals did not consider an important statutory matter in its analysis, we address the issue.

In reaching its decision, the Court of Appeals did not consider the application of OCGA § 19-7-22 (d) (1). This statute, and its relationship to this Court's decision in *Eason*, supra, have important ramifications in legitimation cases. In *Eason*, we concluded that, if an unwed biological father has *not* abandoned his opportunity interest, he has a constitutional right to obtain custody of his child over individuals who are strangers to the child and who seek to adopt unless the biological father is deemed unfit. See id. at 297 (1) (where relationship between prospective adoptive parents and biological father's child does "not take place in the absence of state participation[,] . . . the standard which must be used to determine [the biological father's] right to legitimate the child is his fitness as a parent to have custody of the child [rather than the best interests of the child standard]"). However, effective July 1, 2016, the General Assembly amended OCGA § 19-7-22 (d) (1) to require a different test,

specifically, that legitimation petitions be decided under the "best interests of the child" standard:

> Upon the presentation and filing of a legitimation petition, and after a hearing for which notice was provided to all interested parties, the court may issue an order declaring the biological father's relationship with the child to be legitimate, *provided that such order is in the best interests of the child.*

(Emphasis supplied.) In light of our holding in *Eason* that the "best interests of the child" standard is not sufficient to protect the constitutional rights of unwed biological fathers in at least some circumstances, there is significant doubt about whether OCGA § 19-7-22 (d) (1) can be constitutionally applied (or reasonably construed to be constitutionally applied) in cases where the "fit parent" standard, rather than the "best interests" standard, must be applied to protect an unwed father's constitutional rights.

The Court of Appeals recognized the potential tension between our decision in *Eason* and recent amendments to the Georgia Code involving the "best interests" standard, but cited only OCGA § 19-7-1 (b.1) (discussing "best interests" standard in certain custody

matters involving a parent and certain enumerated third parties) in an effort to explain why the "fit parent" standard applied, not OCGA § 19-7-22 (d) (1), which specifically directs that the "best interests of the child" standard apply in legitimation cases. But, regardless of whether OCGA § 19-7-1 (b.1) could be applicable in this case, the tension identified by the Court of Appeals exists between *Eason* and the statute that *is* directly applicable in this case, OCGA § 19-7-22 (d) (1).

Whether OCGA § 19-7-22 (d) (1) is unconstitutional as applied in this case due to *Eason*'s holding is not a question that the Court of Appeals has jurisdiction to answer. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1) ("The Supreme Court . . . shall exercise exclusive appellate jurisdiction in . . . all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question."). However, the Court of Appeals could, in some future case, decide whether OCGA § 19-7-22 (d) (1) may be reasonably construed to avoid constitutional concerns.[15] See

---

[15] By its plain terms, OCGA § 19-7-22 (d) (1) would seem to apply in this

case, and the statute has never been declared unconstitutional. However, the statute *could* be declared unconstitutional in some other case (but not by the Court of Appeals) or perhaps could be interpreted not to apply (but only if that is a *reasonable* interpretation). See *Clark v. Martinez*, 543 U. S. 371, 381 (II) (125 SCt 716, 160 LE2d 734) (2005) (explaining that the canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that [the legislature] did not intend the alternative which raises serious constitutional doubts"). But it is not at all clear that a reasonable interpretation of OCGA § 19-7-22 (d) (1) would essentially allow an appellate court to graft "fit parent" language onto the statute when the statute only mentions the "best interests of the child" standard. See *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes."). This would especially be true considering the fact that *Eason* analyzes the "fit parent" and "best interests" standards as entirely separate standards that are applicable in different situations. As we stated in *Eason*:

> [T]here exists a continuum of unwed father-child relationships with assigned degrees of [constitutional] protection afforded rights to custody [for the unwed father] . . . . There are circumstances [such as those involving a father who has never had custody of his children] in which the best interests of the child standard is adequate [to protect the father's substantive due process and equal protection rights]. . . . [But] [o]n the other hand a fit biological father who pursues his interest in order to obtain full custody of his child must be allowed to prevail over strangers to the child who seek to adopt.

Id. at 294-296 (1). Furthermore, this Court has already declared unconstitutional other statutes that used a "best interests" standard when those statutes were applied to cases in which a "fit parent" standard was necessary. See *Patten v. Ardis*, 304 Ga. 140, 145 (3) (816 SE2d 633) (2018) (holding that OCGA § 19-7-3 (d), which authorized an award of visitation to a grandparent in the "best interests" of the child and over the objection of a "fit parent," was unconstitutional, because the statute authorized such visitation "without any showing whatsoever (much less a showing by clear and convincing evidence) that the visitation [was] required to keep the child from actual or threatened harm"); *Brooks v. Parkerson*, 265 Ga. 189, 190 (1) -194 (2) (c) (454 SE2d 769) (1995) (holding former OCGA § 19-7-3 unconstitutional where statute provided that courts "may grant any grandparent of [a] child reasonable visitation rights upon proof of special circumstances which make

*Brumbelow*, supra, 347 Ga. App. at 877-879 (3). But, given our holding in Division 2, supra, that the Court of Appeals erred in reversing the superior court's decision on Brumbelow's having abandoned his opportunity interest in E. M., the Court of Appeals did not need to address the issue regarding whether the "best interests" test or "fit parent" test would apply on remand. Accordingly, that portion of the Court of Appeals' discussion should be viewed as dicta only. See *State v. Hudson*, 303 Ga. 348, 350 (2) (812 SE2d 270) (2018) ("The Court of Appeals decided those questions, but it did not need to, and we do not decide them today; because the Court of Appeals' holdings on those questions were

such visitation rights necessary to the best interests of the child," because the statute did not "require a showing of harm before visitation [could] be ordered," and "implicit in Georgia cases, statutory and constitutional law is that state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened") (citations omitted). The only case in which a "best interests" test was "interpreted" to comport with the "fit parent" test was the plurality opinion in *Clark v. Wade*, 273 Ga. 587, 598-600 (544 SE2d 99) (2001), but the statute at issue there, OCGA § 19-7-1 (b.1), included a rebuttable presumption that custody should be awarded to the parent, which could be interpreted to allow rebuttal only where evidence showed that harm would come to the child if custody were awarded to the parent due to the parent being unfit (although just as many Justices — three — did not think that interpretation was reasonable and would have simply deemed the statute unconstitutional).

unnecessary to decide this case, they should be treated as dicta only."); *Mortgage Alliance Corp. v. Pickens County*, 294 Ga. 212, 218 (2) (751 SE2d 51) (2013) ("Because MAC did not seek and obtain a final decision on its Silverstone project as the law requires for an appeal to the superior court, whether the April 2006 Letter was properly 'entered' and 'filed' did not need to be addressed — and the Court of Appeals' discussion of that issue should be viewed as dicta only.") (citation omitted). We leave the question regarding the standard to employ in assessing legitimation where a biological father has not abandoned his opportunity interest to be decided in a case where it is properly presented. *Hudson*, supra, 303 Ga. at 350 (2).

*Judgment reversed. All the Justices concur, except Blackwell, Peterson, and Ellington, JJ., who dissent.*

BETHEL, Justice, concurring.

I join the opinion of the Court and write separately to emphasize my understanding of the scope and nature of appellate review in relation to determinations of an abandonment of an opportunity interest in parenting a child.

Having made a finding of the salient facts, the trial court determined that Brumbelow abandoned his opportunity interest in being a parent of E. M. There was clearly evidence in the record to support this determination and limited evidence to the contrary. The Court of Appeals was wrong to attempt to reweigh the evidence because the proper standard of review asks whether the trial court, which carries the burden and responsibility of making these decisions across Georgia in the first instance, abused its discretion. In this case, it did not.

Moreover, while I would not deem it conclusive on the point, it appears to me that an offer to pay for an abortion is highly probative of a lack of intent to parent the child. Of course, hearts and minds change and the lack of an interest in parenting at the outset of a

pregnancy can give way to genuine parental concern, nurture, and love. But, whether such a change has occurred is patently the sort of question appellate courts routinely leave to trial courts to resolve. Because such a determination is so tightly bound in fact and credibility determinations, we afford broad discretion to those trial courts that hear the testimony and deal with the interested parties in person.

Having made a factual finding that Brumbelow did offer to pay for an abortion, the trial court was authorized to weigh that fact as strong evidence of abandonment of Brumbelow's interest in parenting the child. Importantly, the trial court found other evidence it deemed probative of a determination of abandonment — particularly, Brumbelow's initial denial of paternity and the lack of action on his part (other than offering to pay for an abortion) during Mathenia's pregnancy. By contrast, the evidence offered to support a determination that Brumbelow's interest was not abandoned was in no way overwhelming. In another case, there might be strong evidence that could outweigh this or any other evidence of a clear

and unambiguous action demonstrating a complete lack of interest in parenting a child. There is no clear talisman on either side of the equation. And trial courts must weigh all salient facts they find in reaching a determination concerning abandonment of opportunity interest. When they do and their determination falls within the parameters of what a reasonable jurist could determine on the facts found, they are due to be affirmed.

PETERSON, Justice, dissenting.

I am far less certain than the majority that the Court of Appeals got it wrong. The majority overstates the responsibility of appellate courts to ignore undisputed facts that a trial court has not rejected. And the only question the majority actually answers today is essentially one of the sufficiency of the evidence; our rules make clear that is not a matter for our certiorari review. I would dismiss this case as improvidently granted, and so I respectfully dissent.

This case involves a biological father who had a one-night-stand with a woman who was married to another man; the child was conceived that night. It was undisputed that the father doubted he was the father. It was undisputed that the mother did not want the biological father to contact her for at least some portion of her pregnancy. And it was undisputed that the biological father filed his legitimation petition mere weeks after the child was born, and before he received results of a paternity test; not the years later many Georgia cases point to as coming too late.

Our case law does recognize the ability of appellate courts to

notice some undisputed facts not rejected by a trial court. See *Hughes v. State*, 296 Ga. 744, 746 (1) n.4 (770 SE2d 636) (2015) (when "some or all of the material facts may be undisputed, as where the defendant concedes a fact unhelpful to his cause in his motion to suppress, where the State admits a fact unhelpful to its case in connection with the motion, or where the State and defendant expressly stipulate to a fact . . . an appellate court properly may take notice of the undisputed facts — even if the trial court did not — without interfering with the prerogative of the trial court to resolve disputes of material fact"); cf. *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) ("In this Court's review of a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." (citation omitted)).

The majority acknowledges this case law, but suggests that it is inapplicable here because the undisputed facts cannot be used to make alternative findings of fact contrary to those explicitly or

implicitly made by the trial court. I agree that an appellate court cannot make factual findings contrary to factual findings made by the trial court so long as those latter findings are supported by some evidence. But the undisputed facts that I note do not actually conflict with any <u>factual findings</u> of the trial court; rather, those undisputed facts are merely contrary to the trial court's ultimate conclusion that the father abandoned his opportunity interest. And that ultimate conclusion is itself not a finding of a discrete fact but instead is based on several factors. If abandonment were a discrete factual finding, appellate courts would always affirm that finding unless there were nothing in the record to support it. But that is not what our appellate courts have done. See *Binns v. Fairnot*, 292 Ga. App. 336, 338 (665 SE2d 36) (2008) (rejecting trial court's conclusion that father abandoned his opportunity interest, even though father unilaterally stopped contacting the child more than two years before he filed legitimation petition); *Bowers v. Pearson*, 271 Ga. App. 266, 270-271 (609 SE2d 174) (2005) (rejecting trial court's conclusion that father abandoned his opportunity interest by failing to provide financial or

other assistance to mother during her pregnancy, even where maternal grandfather denied father's account that grandfather refused to discuss pregnancy with him).

Notwithstanding these undisputed facts, there may well have been enough evidence in the record, viewed in the light most favorable to the trial court's findings, to support the trial court's conclusion that the father abandoned his opportunity interest. But this question — the only question we decide today — is not cert-worthy, see Supreme Court Rule 40 ("Certiorari generally will not be granted to review the sufficiency of evidence."), and its answer is not nearly as clear to me as it appears to the majority.

Because I do not believe the only question the majority answers today is worthy of our review on certiorari, and it is not clear to me that the Court of Appeals erred, I would dismiss this case as improvidently granted. I respectfully dissent.

I am authorized to state that Justice Blackwell and Justice Ellington join in this dissent.

DECIDED MAY 18, 2020.
Certiorari to the Court of Appeals of Georgia — 347 Ga. App. 861.

*Hester Outman, Justin Y. Hester, James B. Outman*, for appellants.

*Timothy P. Healy; Cathey & Strain, Dennis T. Cathey, Thomas L. Hatchett III*, for appellee.

*Kazmarek Mourey Cloud Laseter, Richard A. Horder, Jacqueline O. Eisermann*, amici curiae.