**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**September 10, 2020**

# In the Court of Appeals of Georgia

A20A0963. WESTBROOK v. EIDYS.

HODGES, Judge.

Veronica M. Westbrook and David H. Eidys, Jr. are the biological parents of a minor child. Westbrook appeals from the trial court's order permitting Eidys to legitimate and obtain joint custody of the child along with visitation. Specifically, Westbrook contends that the trial court (1) abused its discretion in permitting legitimation because Eidys abandoned his parental rights; (2) failed to make the threshold determination as to whether Eidys abandoned his parental rights; and (3) failed to determine whether legitimation and joint custody were in the best interest of the child. The record demonstrates that the trial court did not determine whether legitimation and joint custody were in the best interest of the child and, thus, we

vacate the trial court's order and remand the case with direction for the trial court to conduct such an analysis.

> An appellate court reviews a trial court's decision on a legitimation petition for abuse of discretion only. Moreover, factual findings made after a hearing shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

(Citation and punctuation omitted.) *Mathenia v. Brumbelow*, ____ Ga. ___ (1) (843 SE2d 582, 584) (2020). Moreover, we "limit our discussion below to the facts as found by the superior court and supported by the evidence, viewed in the light most favorable to the superior court's ruling." Id. at 585 (1). We may, however, "properly take notice of the undisputed facts" so long as we do not "make alternative findings of fact that are contrary to those explicitly or implicitly made by the trial court where other evidence exists that supports the trial court's findings." Id. at n. 3.

Viewed in the light most favorable to the superior court's ruling and factual findings, the evidence presented at the hearing on Eidys' legitimation petition showed that he and Westbrook were engaged and living together in California when their child was born in June 2008. Eidys was present at the child's birth and signed the

2

birth certificate. The couple broke up shortly thereafter, and Eidys exercised some visitation with the child before moving across the country to St. Petersburg, Florida after he lost his job. In April 2009, he saw the child for two weeks, and in January 2010, he saw the child for three weeks. In August 2010, Eidys was ordered to pay monthly child support to Westbrook, and he was current on his payments at the time of the hearing.

Eidys did not always know where Westbrook and the child were living. Westbrook provided Eidys' mother with her address, but Westbrook did not provide it to Eidys and she forbade his mother from sharing the address with him. Eidys reached out to Westbrook via text to attempt to schedule more visitation, but they would fight about whether Westbrook would supervise the visitation, and ultimately no additional visitation happened for five years. From 2012 to 2014, Westbrook and the child lived in Tijuana, Mexico. Eidys testified that he had great difficulty working with Westbrook to secure visitation with the child. In January 2015, Westbrook and her husband moved to Georgia. Eidys had supervised visitation with the child over Memorial Day weekend in May 2015 and again in September 2015.

The next time Eidys saw the child was when he learned of Westbrook's address and showed up unannounced at her house in January 2019. Eidys and the child had

a brief visitation in a parking lot. Eidys subsequently filed his legitimation petition in March 2019. Westbrook and the child have since moved to Washington State with the child's stepfather.

Following an evidentiary hearing, the trial court granted the legitimation petition, awarded joint custody to Westbrook and Eidys with primary physical custody with Westbrook, and visitation with Eidys. The written order entered by the trial court did not contain any factual findings, but the trial court issued the following oral ruling at the close of the hearing:

> You know, Mr. Eidys was present when the child was born. There was a relationship during pregnancy and the relationship didn't last long after birth. Mr. Eidys, you know, when a Child Support Order was put in place he has - he is current on all child support obligations that have been in place for nine years. I find that the biological mother and the step-father have placed obstacles in the way of Mr. Eidys remaining in contact by moving to Mexico and not providing accurate mailing addresses or phone numbers, and I can't - it would be easier if Mr. Eidys had taken Mrs. Westbrook back to court sooner, but that doesn't change the fact that I find that the mother and step-father obstructed the father's access to the child and set burdens on his contact and visitation that created alienation issues. So I'm going to grant the legitimation.

Westbrook timely appealed from the trial court's order.

4

1. Westbrook contends that the trial court abused its discretion in permitting Eidys' legitimation of the child because he had abandoned his opportunity to develop a relationship with her. Because there is some evidence to support the trial court's factual findings, we must disagree.

Georgia law is clear that

a biological father is afforded an opportunity to develop a relationship with his offspring. If the father grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. Unwed fathers gain from their biological connection with a child an opportunity interest to develop a relationship with their children which is constitutionally protected. In ruling on a petition to legitimate a child, the trial court must first determine whether the biological father has abandoned his opportunity interest to develop a relationship with the child.

(Citations omitted.) *Durden v. Anderson*, 338 Ga. App. 565, 565-566 (1) (790 SE2d 818) (2016). "Factors which may support a finding of abandonment include, without limitation, a biological father's inaction during pregnancy and at birth, a delay in filing a legitimation petition, and a lack of contact with the child." (Citation omitted.) *Neill v. Brannon*, 320 Ga. App. 820, 821 (1) (738 SE2d 724) (2013).

5

Here, the trial court found that Eidys was current on all of the child support that he had been ordered to pay and that barriers put in place by Westbrook and her husband were the cause of Eidys' difficulty visiting and staying in contact with the child. Specifically, the trial court highlighted Westbrook's failure to keep Eidys informed of her address and phone number and her prior international move. There was some evidence to support this finding, and thus we cannot say that the trial court abused its discretion in determining that Eidys did not abandon his opportunity to form a relationship with the child. See *Mathenia*, 843 SE2d at 584 (1); see also *Binns v. Fairnot*, 292 Ga. App. 336, 338 (665 SE2d 36) (2008), disapproved of on other grounds by *Mathenia*, 843 SE2d at 590 (3), n. 14 ("In particular, [the biological father's] constant payment of financial support coupled with his avowed interest in establishing and maintaining a relationship with the child mitigate against a finding of abandonment, and the trial court abused its discretion in holding otherwise.").[1]

---

[1] *Neill*, 320 Ga. App. at 820, does not dictate a different result. In that case, after learning that he was the biological father of the child and while incarcerated on drug offenses or in rehabilitation, Brannon made no attempt to contact the child or send the child any cards or gifts despite knowing her address. Id. at 823-824 (1). Here, however, Eidys was present at the child's birth, signed the birth certificate, had some contact with the child. Moreover, even though Eidys sent the child no cards or gifts, the trial court found that Eidys did not know the child's address due to Westbrook withholding the information from him.

6

2. Westbrook contends that the trial court erred in failing to include in its written order a finding that Eidys did not abandon his opportunity interest in the child. We find that Westbrook waived any error.

Westbrook is correct that she requested that the trial court include findings of fact and conclusion of law in its order. Although it is clear from the transcript that the trial court considered this issue of abandonment, the final order drafted by counsel for Eidys did not contain any findings of fact or conclusions of law. Westbrook, however, waived any complaint she may have had because she agreed to the form of the order as drafted.

> In the case before us, instead of urging the court to enter findings and conclusions, the order was "approved by" appellant's counsel. Where a final order is "approved by" counsel for both parties in writing as was done here, this is more than a mere signature. It is not approval of the substance (result) of the order (if it were, the right of appeal would be waived), but a showing that counsel has seen the proposed order and agrees that it contains what the court orally directed be included in it. Counsel's "approval" thus is an indication of approval of the content or form of the order rather than its substance. If findings and conclusions are to be insisted upon, the time to do it is when the proposed order is presented to counsel for "approval." After approving the form of the order, a party cannot complain of the court's failure to include findings of fact and conclusions of law.

7

*Rude v. Rude*, 241 Ga. 454, 455 (1) (246 SE2d 311) (1978).

3. Lastly, Westbrook contends that the trial court failed to determine whether legitimating the child and granting joint custody to Eidys was in the child's best interest. We agree.

As of 2016, Georgia law provides that

[u]pon the presentation and filing of a legitimation petition, and after a hearing for which notice was provided to all interested parties, the court may issue an order declaring the biological father's relationship with the child to be legitimate, *provided that such order is in the best interests of the child.*

(Emphasis supplied.) OCGA § 19-7-22 (d) (1).[2] Further,

[t]he [trial] judge hearing the issue of custody shall make a determination of custody of a child and such matter shall not be decided by a jury. The judge may take into consideration all the circumstances of the case, including the improvement of the health of the party seeking a change in custody provisions, in determining to whom custody of the child should be awarded. *The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best*

---

[2] The constitutionality of this law has been called into question; however, neither party challenged the constitutionality of the law in the trial court or on appeal. See *Mathenia*, 843 SE2d at 591 (4).

8

*interest of the child* and what will best promote the child's welfare and happiness and to make his or her award accordingly.

(Emphasis supplied.) OCGA § 19-9-3 (a) (2).

As discussed above in Division 2, Westbrook waived any argument concerning the form of the order entered by the trial court. It is apparent, however, from the trial court's oral pronouncement that it did not analyze whether it would be in the best interest of the child to be legitimated or whether it was in her best interest for Eidys to be awarded joint custody. Instead, upon finding that Eidys did not abandon his opportunity interest in having a relationship with the child, the trial court immediately announced that Eidys would have joint custody of the child and established a visitation schedule as well as other rules for the parties to follow. We must, therefore, vacate the trial court's judgment and remand the case with direction for the trial court to consider whether legitimation and joint custody are in the best interest of the child. See *Davis v. LaBrec*, 274 Ga. 5, 7 (549 SE2d 76) (2001) (affirming this Court's reversal and remand to the trial court to consider whether it was in the best interests of the child to grant the biological father's petition to legitimate a child which would require de-legitimizing the relationship between the child and the legal father); see also *Longino v. Longino*, 352 Ga. App. 263, 266 (834 SE2d 355) (2019) (remanding

9

case to trial court to analyze whether there was a material change in circumstance to justify a custody modification that was impermissibly based solely on an analysis of the best interest of the child).

*Judgment vacated and case remanded with direction. McFadden, C. J., and Doyle, P. J., concur.*