**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 26, 2026**

# In the Court of Appeals of Georgia

A26A0661. WEEKS v. CLAY.

MERCIER, Judge.

Michael Weeks appeals from the trial court's order denying his petition to legitimate his biological daughter, R. C. Although we affirm the legitimation determination, we find that the trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-40 et seq., to award custody in this matter. To the extent the trial court's order addresses custody, therefore, it must be vacated.

A trial court exercises its discretion in resolving a legitimation petition, and we will not disturb the court's ruling absent an abuse of that discretion. See *Mathenia v. Brumbelow*, 308 Ga. 714, 715(1) (843 SE2d 582) (2020). On appeal from a legitimation

determination, we review the evidence in the light most favorable to the ruling, keeping in mind that

> factual findings made after a hearing shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

Id. (quotation marks omitted).

Viewed in this manner, the evidence shows that R. C. was born out of wedlock to Weeks and Chelsea Clay in 2017. Following the birth, Weeks gave Clay money "every blue moon" to help with R. C. , but he did not pay consistent child support. Weeks eventually moved to Texas, and he periodically traveled to Georgia to visit R. C.

In June of 2023, the parties agreed that R. C. would stay with Weeks in Texas for the summer. Weeks picked R. C. up in Georgia and drove her to Texas, with the expectation that he would return R. C. to Clay before school commenced in August. As August approached, however, Weeks asked Clay whether he could keep R. C. in Texas, noting that it was expensive for him to bring her back to Georgia. Clay allowed

2

her daughter to stay in Texas for the school year, but insisted that she be returned to Georgia in May of 2024, and Weeks agreed to that condition. Clay gave Weeks money and provided him with R. C.'s birth certificate so that he could enroll her in school.

At some point, Weeks stopped picking up Clay's telephone calls, and she was unable to contact R. C. using the tablet she had purchased for R. C. so that they could communicate directly. When Clay finally spoke with Weeks, he told her that she could only contact R. C. through him. Clay sent Weeks money for a rental car to return R. C. to Georgia in May, and she also offered to arrange a plane ticket for R. C., but Weeks did not bring the child back, again stopped answering Clay's calls, and refused to give Clay his address.

Approximately six months after R. C. began living with him in Texas, Weeks spoke with an attorney about obtaining custody of her. He was told that he first needed to be legitimated as R. C.'s father in Georgia, after which he could pursue custody through the Texas courts. Weeks thus filed the instant petition for legitimation on July 19, 2024, asserting, among other things, that R. C. had resided in Texas for over one year and that Texas was R. C.'s "home state." The trial court denied the legitimation petition and ordered Weeks to return R. C. to Clay. This appeal followed.

1. Weeks first argues that the trial court applied the wrong standard in resolving the legitimation petition. Historically, courts addressing a petition for legitimation have applied a two-pronged test based on the Georgia Supreme Court's decision in *In re Baby Girl Eason*, 257 Ga. 292 (358 SE2d 459) (1987):

> The court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.

*Smith v. Soligon*, 254 Ga. App. 172, 173(2) (561 SE2d 850) (2002) (citing *In re Baby Girl Eason*, 257 Ga. at 296–297(1)); see also *In the Interest of J. M.*, 337 Ga. App. 811, 813 (788 SE2d 888) (2016) (applying the *Eason* test).

Following a hearing at which both parties testified, the trial court determined that Weeks had not abandoned his opportunity interest in having a relationship with R. C. But it concluded that legitimation was not in R. C.'s best interests. Specifically, it found that Weeks had used lies and deceit to gain control of R. C. and keep her from Clay; had failed to facilitate and at times hindered communication between R. C. and

4

Clay; had refused to return R. C. to Clay, despite his promises to do so; had made unfounded attacks on Clay's character; and would likely alienate R. C. from Clay.

On appeal, Weeks argues that the trial court improperly applied the best interests standard — rather than the parental fitness test — in assessing his legitimation effort. In 2016, however, the legislature amended the statutory provision governing legitimation petitions to require consideration of the child's best interests. See *Mathenia*, 308 Ga. at 724(4). Pursuant to that amendment:

> Upon the presentation and filing of a legitimation petition, and after a hearing for which notice was provided to all interested parties, the court may issue an order declaring the biological father's relationship with the child to be legitimate, *provided that such order is in the best interests of the child*.

OCGA § 19-7-22(d)(1) (emphasis supplied).

The legislature has made clear that the best interests of the child — not simply parental fitness — are key to resolving a legitimation petition. See *Sheppard v. Milsaps*, 374 Ga. App. 480, 487(1)(a)(ii) (913 SE2d 117) (2025) ("[F]ollowing a hearing on a legitimation petition, a court may issue an order granting that petition provided that such order is in the best interests of the child." (quotation marks omitted)); *Schatte*

5

*v. McGee*, 368 Ga. App. 868, 870(1) (891 SE2d 435) (2023) ("If the trial court concludes that the biological father has not abandoned this opportunity interest, the trial court must determine whether legitimation is in the best interest of the child."). The trial court did not use the wrong standard in assessing Weeks's petition.[1]

2. Next, Weeks argues that the trial court failed to consider and properly weigh all factors associated with the best interests of the child standard. Weeks notes that, in the context of child custody and visitation, OCGA § 19-9-3(a)(3) sets forth 17 factors that a trial court may consider when determining the best interests of a child. He contends that each of these factors must also be evaluated in the legitimation context and, although the trial court can weigh the factors at its discretion, it "is not free to ignore relevant factors[.]"

The statute provides, however, that a trial court assessing the best interests of a child "*may* consider *any* relevant factor including, but not limited to[,]" the enumerated factors. OCGA § 19-9-3(a)(3) (emphasis supplied). Even if Weeks is

---

[1] Our Supreme Court has raised concerns regarding the constitutionality of the best interests requirement in OCGA § 19-7-22(d)(1) "where the 'fit parent' standard, rather than the 'best interests' standard, must be applied to protect an unwed father's constitutional rights." *Mathenia*, 308 Ga. at 724(4). Weeks, however, has not challenged the constitutionality of OCGA § 19-7-22(d)(1) or presented any argument as to why this statutory provision and its best interests requirement do not apply here.

6

correct that OCGA § 19-9-3(a)(3) applies here, no particular factor or analysis is mandatory. And nothing in the trial court's order indicates that it failed to consider any relevant evidence.

When determining whether legitimation is in a child's best interests, a trial court ultimately "must examine the benefits that might flow to the child if he [or she] were legitimated and consider the legal consequences of the grant of the petition." *Sheppard*, 374 Ga. App. at 487(1)(a)(ii) (quotation marks omitted). In this case, the trial court found that Weeks had used lies and deception to keep R. C. from her mother and limit their communication, evidencing an unwillingness to facilitate and encourage a close and continuing relationship between R. C. and Clay. See OCGA § 19-9-3(a)(3)(N) (in determining best interests of a child, trial court may consider "[t]he willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child"). The court also found that, given Weeks's failure to return R. C. to Georgia, he likely "would continue to keep [R. C.] from [Clay], further eroding their relationship, if the Court were to grant him legal rights to the child."

The trial court further noted that Weeks had experienced extensive periods of "no work[,]" which would not benefit R. C. And it expressed concern that R. C. would not benefit from Texas custody laws that, the court feared, would favor Weeks because he had managed to keep R. C. in Texas through deception. The trial court concluded:

> [Weeks] has continued to hold the minor child long past [Clay's] initial grant of consensual visitation, and long past the rescission of any grant of visitation. [Weeks] is illegally depriving [Clay] of her [p]arental [r]ights to her child. The [c]ourt will not aid [Weeks] in this kidnap by fraud and deceit. For the [c]ourt to hold otherwise would be to sanction the fraud and deceit of [Weeks].

Although Weeks testified that he wanted R. C. in Texas because he was worried about Clay's stability, living situation, and alleged drug use, and he claimed that the parties had always planned for R. C. to remain in Texas for the entire 2023-2024 school year, the trial count deemed his testimony unfounded and lacking in credibility. The trial court was authorized to reject Weeks's testimony. See *Sheppard*, 374 Ga. App. at 486(1)(a)(i) ("The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (quotation marks omitted)). Moreover, at least some evidence supports the trial

8

court's findings that Weeks did not return R. C. when promised, misled Clay about his plans to bring R. C. home, hindered and at times cut off Clay's communication with R. C., made unsubstantiated allegations about Clay, experienced periods of unemployment, and was trying to manipulate the custody situation by keeping R. C. in Texas through deceit.

Given the particular circumstances of this case, the trial court properly exercised its discretion in determining that legitimation was not in R. C.'s best interests. See *Davis v. Taylor*, 370 Ga. App. 837, 843(2)(c) (898 SE2d 574) (2024) ("Because there was evidence supporting the trial court's finding that [the mother] had undermined [the child's] relationship with [the father] . . . , we cannot say that the trial court abused her very broad discretion in concluding that the award of primary physical custody to [the father] was in [the child's] best interest."). The trial court, therefore, did not err in denying Weeks's petition for legitimation. See OCGA § 19-7-22(d)(1).

3. After rejecting the legitimation request, the trial court further ordered Weeks to return R. C. to "the sole legal and physical custody of" Clay, explaining that Weeks "ha[d] no right to hold the child against her mother's will, and no rights to the child

at all[.]" Weeks now challenges the trial court's authority to enter a custody order on the ground that Texas — not Georgia — was R. C.'s home state.

As an initial matter, we note that Weeks's legitimation petition did *not* ask the trial court to enter an order as to custody; it only requested legitimation. At the hearing on the petition, counsel for Weeks explicitly stated that Weeks was not seeking a custody determination "because Georgia is not the child's home state." Counsel further clarified Weeks's intent, stating: "So, this is, essentially, a bifurcated case. Georgia will have the legitimation portion, Texas will have the custody portion." See OCGA § 19-7-22(b) ("The biological father of a child born out of wedlock may render his relationship with the child legitimate by petitioning the superior court of the county of the residence of the child's mother or other party having legal custody or guardianship of the child[.]"); OCGA § 19-7-22(g) ("A legitimation petition *may* also include claims for visitation, parenting time, or custody. *If* such claims are raised in the legitimation action, the court may order, in addition to legitimation, visitation, parenting time, or custody based on the best interests of the child standard." (emphasis supplied)). Nevertheless, Clay asked the trial court to "bring [her] baby

10

back," and the trial court addressed custody, ordering Weeks to return R. C. to Clay immediately.

We agree with Weeks that the trial court lacked authority to make such an order. Under the UCCJEA, a Georgia court generally

> has jurisdiction to make an initial child custody determination only if … [t]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state[.]

OCGA § 19-9-61(a)(1).

The UCCJEA defines the term "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." OCGA § 19-9-41(7); see also *Markle v. Dass*, 300 Ga. 702, 705–06 (797 SE2d 868) (2017) ("[T]he term 'lived' in the definition of 'home state' refers to the state where the child is physically present without regard to legal residence." (quotation marks omitted)). The record shows that R. C. had been living with Weeks in Texas for over one year when Weeks filed the legitimation petition, a proceeding the trial court used as a

11

springboard for the custody order. Nothing indicates that a court had previously entered a ruling regarding custody, rendering this the initial child custody determination. See OCGA § 19-9-41(3) ("'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child."); OCGA § 19-9-41(8) ("'Initial determination' means the first child custody determination concerning a particular child."). And although there are exceptions to the home state requirement, the record contains no evidence that an exception existed here. See OCGA §§ 19-9-61(a)(2-4), 19-9-64, 19-9-68(a); Tex. Fam. Code § 152.208(a).

Because Texas was R. C.'s home state at the time, the trial court lacked subject matter jurisdiction to enter an order as to her custody. See *Markle*, 300 Ga. at 706–07 (Georgia trial court lacked jurisdiction to order putative father, who had not legitimated his son, but had lived with the child in New Mexico for over six months, to return the child to the mother in Georgia); OCGA § 19-9-61(a)(1). Thus, we affirm

the denial of Weeks's legitimation petition, but we must vacate the trial court's order to the extent it attempted to resolve issues with respect to custody.[2]

*Judgment affirmed in part and vacated in part. Brown, C. J., and Rickman, P. J., concur.*

---

[2] It appears that Weeks, in fact, returned R. C. to Clay on December 22, 2024. It is unclear where and with whom R. C. is living at this point (over one year later). We note, however, that under Georgia law, "[o]nly the mother of a child born out of wedlock is entitled to custody of the child, unless the father legitimates the child as provided in Code Section 19-7-22. Otherwise, the mother may exercise all parental power over the child." OCGA § 19-7-25.